No. 22,386.

M. E. THORN, Appellee, v. THE EDGAR ZINC COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

COMPENSATION ACT—*Feeding Ore Crusher — Injuries — Workman Not Guilty of Willful Negligence.* A workman was engaged in feeding ore into a crusher. A fragment of ore or a scrap of iron caught between the rollers and stopped them. He undertook to remove it with a small stick, which was drawn between the rollers, lacerating his forefinger. He had been provided with a long-handled maul with which to break pieces of the ore which were too large, and a rule with which he was familiar directed that in case the rollers became choked he should shut down the machinery, a switch for that purpose being located some thirty feet away. *Held,* that he cannot be said to have failed to use a guard and protection against accident furnished him by his employer, within the meaning of the provision of the compensation act which makes such conduct, if willful, a bar to a recovery.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed January 10, 1920. Affirmed.

*O. P. Ergenbright,* of Independence, for the appellant.

*Sullivan Lomax,* of Cherryvale, for the appellee.

The opinion of the court was delivered by

MASON, J.: M. E. Thorn was injured while in the employ of the Edgar Zinc Company. He recovered a judgment against the company under the workmen's compensation act, and it appeals.

A reversal is asked solely on the ground that the circumstances were such as to constitute a valid defense under the italicised words in the following extract from the statute:

"*If* it is proved that *the injury to the workman results* from his deliberate intention to cause such injury, or *from his willful failure to use* a guard or protection against accident required pursuant to any statute and provided for him, or *a reasonable and proper guard and protection voluntarily furnished him by said employer,* or solely from his deliberate breach of statutory regulations affecting safety of life or limb, or from his intoxication, *any compensation in respect to that injury shall be disallowed.*" (Gen. Stat. 1915, § 5896; Laws of 1917, ch. 226, § 27.)

The plaintiff's version of the occurrence, which must be regarded as correct, was substantially this: He was engaged in feeding coarse ore into a crusher, the two rollers of which, revolving nearly in contact, were about two feet long and two feet in diameter, mounted about three feet above the floor. Occasionally a piece of ore on account of its size would not go between the rollers. He was furnished with a long-handled maul for the purpose of breaking such pieces. Sometimes he attempted to mash chunks with this and failed. A very small piece of ore could not be got out with it. There were occasionally small pieces of iron in the ore, such as bolts or taps, which could not be broken or forced through with the maul. When one of them caught between the rollers the workmen would take a stick and flip it out. At the time of the accident a fragment of ore or a scrap of iron had become lodged between the rollers and stopped them. The plaintiff picked up a short stick—a piece of lath—and undertook to pry it out, as he had often done before. The rollers started up, pulling the stick through them, a nail in it or a splinter catching and tearing his forefinger. He said at one time that he could not tell why he had not used the maul; at another that he had found it would not dislodge the substance—that he used the stick unthoughtedly. He did just what he saw every other man there do; he had seen other workmen use the stick the same as he did.

Immediately in front of the place where he worked was posted a notice reading:

"Notice! In case the elevator or crusher rolls or breakers become choked, shut down machinery until same is cleared. Edgar Zinc Co., G. W. Whipple, Superintendent."

He had read the notice and knew its contents—saw it almost every day. The power could be turned off by an electric switch some thirty feet from where he worked. He did not use it because he was afraid of it. He had turned it off on two previous occasions, and each time he had received a shock. He had seen other workmen take stuff out of the rollers—unclog them—without shutting off the power.

The English act and the acts of many of the states deny compensation to a workman whose injury is attributable to his own "serious and willful misconduct." That provision, how-

ever, has never been given a place in the Kansas statute, and whether the action of the plaintiff would fall within that description need not be considered. Nor is it material that the defendant may have been guilty of a high degree of negligence. (*Messick v. McEntire*, 97 Kan. 813, 156 Pac. 740.) To warrant a reversal the court must declare as a matter of law that the injury resulted from his willful failure to use a guard and protection furnished by his employer. It has been said that in order to defeat an award because of a statutory exception, the case must be brought clearly within it (*Wick v. Gunn* [Okla.], 169 Pac. 1087), and that the mere voluntary and intentional omission of a workman to use a guard or protection furnished to him is not necessarily to be regarded as willful. (Same case; also, *General American Tank Car Corp. v. Borchardt* [Ind.], 122 N. E. 433; to the contrary, see *Bay Shore Co. v. Industrial Acc. Com.*, 36 Cal. App. 547.) However that may be, the present case must be affirmed upon a different ground.

We do not think that either the maul referred to or the switch, coupled with the direction as to its use, constituted a "guard and protection" furnished by the employer, within the meaning of that phrase as it occurs in the statute under consideration. The expression quoted was doubtless intended primarily to designate some such screen or barrier to prevent the workman coming in contact with machinery as is required by the factory act. (*Henschell v. Railway Co.*, 78 Kan. 411, 96 Pac. 857.) We do not mean to imply, however, that it covers no wider a field than that. The maul appears to have been furnished as a means to break pieces of ore where that should become necessary—to prevent rather than to remedy the choking of the rollers, the latter situation being provided for by the direction to shut down the machinery. The fact that in order to remove the obstruction the plaintiff used another and less safe, although possibly more efficacious, instrument than the one furnished by his employer, is not equivalent to his refusal to use an available guard or protection against the danger to which his injury was due.

The question whether the failure to stop the machinery brought the plaintiff within the statutory exception is more difficult. In a sense it may be said that the rule adopted re-

quiring the machinery to be shut down in case the rollers became choked, a convenient means for the purpose being supplied, constituted a reasonable and proper guard and protection against the risk that would result from an attempt to remove the obstacle while the rollers were in motion. But if that construction were adopted, it would seem that a recovery would be prevented whenever a workman was injured in consequence of his neglecting to follow a rule adopted by his employer for his benefit, or of his pursuing a dangerous method of accomplishing an object where a safer one had been provided. Such a course would clearly constitute negligence, and might even be characterized as willful misconduct, but we conclude that it is not the kind of delinquency that was within the mind of the legislature when it denied a recovery to one who was injured through his willful failure to use a guard and protection furnished him by his employer. We do not regard it as advisable to attempt any more definite interpretation of the statute, or to lay down any general rule by which to determine whether a particular line of conduct is within the exception or outside of it. In such an undertaking we might readily be led into error through overlooking some situation that might hereafter arise.

The judgment is affirmed.