No. 22,666.

JACOB BERSCH, *Appellee*, v. MORRIS & COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*"Willful" Failure of Employee to Use Guard Against Accident—Statute Interpreted.* The meaning of the word "willful," as used in the statute denying compensation to a workman injured through willful failure to use a guard against accident provided by his employer (Laws 1917, ch. 226, § 27), is not necessarily fulfilled by voluntary and intentional omission, but includes the element of intractableness, the headstrong disposition to act by the rule of contradiction.

2. SAME—*Injuries—Not Caused by "Willful" Negligence of Employee.* Findings of fact and evidence sustaining the general verdict considered, and *held*, the plaintiff, who was injured because of failure to replace guards which he had removed from a casing machine which he was cleaning, was not precluded by the statute from recovering compensation.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed May 8, 1920. Affirmed.

*C. W. Trickett*, of Kansas City, for the appellant.

*W. W. McCanless*, of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for compensation for in-- juries received by a workman while cleaning a casing machine in the defendant's packing house. The defense was that the plaintiff willfully failed to use a guard, provided by the em- ployer, which would have prevented the accident. The plain- tiff recovered, and the defendant appeals.

. A witness for the defendant described the machine as fol- lows:

"The machine weighs about twenty-five hundred or three thousand pounds, and consists of a scraper, a clipper, a drum, a big iron cylinder or roller, a cast-iron roller, and two small rubber rollers. They have got iron through the center, and there is rubber around the outside of them and they are covered with canvas. What we call the scraper and the clipper both revolve the same way around and clean the casing. The cas- ing runs in between the drum and the scraper, and there is where it is cleaned. The small rollers are about eighteen inches long and about four or five inches in diameter. Under these are spray pipes. The machine is run by a belt which runs to another pulley on a shaft line. There is a lever comes down, and you throw the belt from a loose pulley into the pulley that runs the machine."

There is a cover or guard in front of the scraper, another at the rear of the machine, and a piece of sheet iron with a handle is laid over the top.

After a day's work, the operator of a machine cleans it. A witness for the defendant described the method of cleaning the machine as follows:

"To clean the machine he has to take a hose and wash the machine off with the hose. Then he is supposed to stop the machine and wipe the knives off, or blades, on the scraper. They are not knives; they are blades. They are hoop iron, rounded off. They are about an inch and a half wide and eighteen inches long. He is supposed to stop the machine. . . . Then after wiping off the blades, we put the guards on, and then start the machine running, and then wipe the drum."

Another witness for the defendant testified as follows:

"To clean the machine, when you get done with the casing, we take the top part back behind the guard, you know, take that off, and turn the hose of hot water, and shoot right into the knives, into the blades, in order to wash it all off. When we done washed it, we stop the machine, and take the front guard off. Then we take the front guard off and take a rag and wipe the blade off right clean. When we done wiped it, we·

put the front guard on and start the machine again and oil the drum, take and oil it like that.   After we get done oiling the drum, then we stop the machine again and take the front guards off and oil the blades afterwards, then you done with it."

With a verdict for the plaintiff, the jury returned the following findings of fact:

"Q. 1. Did the foreman, L. Roebling, instruct the plaintiff to never run said machine with the front guard removed?   Answer: Yes.

"Q. 2. Did the plaintiff remove the front guard from said machine shortly before the time of the accident.   Answer: Yes.

"Q. 3. Did the plaintiff neglect to replace said guard before starting the machine?   Answer: Yes.

"Q. 4. Would this accident have occurred, had the plaintiff replaced the guard on said machine?   Answer: No."

The plaintiff was born in Russia, spoke German, and testified through an interpreter.   His meaning is not always clear, but he testified to this effect: The method of cleaning the machine was to take off the guards, wash the machine with the hose, and then use the drying cloth, drying the big drum at the bottom first, and then the blades.   The machine was kept running until the time came to dry the blades, when it was stopped.   It will be observed that this order of performing the work is quite different from that described by witnesses for the defendant.   The plaintiff used a cloth to dry the machine after washing it.   The interpreter reported him as saying the cloth got caught while he was drying the small rolls on top.   Afterwards he said he was hurt while he was drying the big drum.   Of course that was the account of the injury which he intended to give.   The plaintiff said he could not clean the machine with the cover on, and that he took the guards off so he could clean the machine with hose and water.   After telling how he washed and dried the machine, the plaintiff said: "I couldn't put the guards back on until it was all done."   Of course he could have stopped the machine and replaced the guards at any time, and he probably meant that replacing the guards was the last act, as taking them off was the first act, performed in the process of cleaning and drying the machine.

Conflicts in the evidence not settled by the findings of fact were resolved by the jury in the plaintiff's favor.   The plaintiff was not at fault because the machine was running.   He

was wiping the drum, and it was proper, as the defendant's witnesses admitted, that the drum should be revolving, under application of power. If it were irregular·for the plaintiff to remove the front guard in order to wash the machine with the hose, removal of the guard did not cause his injury. His fault, if any, lay in not replacing the guard before wiping the drum. To the plaintiff it appeared to be necessary to remove the front as well as the back guard in order to wash the machine. If he measurably comprehended the instruction not to run the machine at all with the front guard off, as the jury may have doubted, it did not seem to him that the instruction applied to the process of flushing the machine, because in his judgment he could not do that with the cover on. If he ought to have replaced the guard before attempting to wipe and oil the drum, he did just what the third finding indicates—he neglected to replace the guard. While he did this contrary to instruction, and so may be said to have been guilty of conscious, voluntary omission, he did not mean to oppose his will to the will of his employer, in any perverse or refractory sense. At least, the members of the jury, who saw the man, gauged his capacity, formed an opinion of his disposition, and weighed his testimony, were authorized to reach that conclusion.

In the case of *Thorn v. Zinc Co.*, 106 Kan. 73, 186 Pac. 972, the court's interpretation of the statute, "willful failure to use a guard or protection against accident required pursuant to any statute and provided for him" (Laws 1917, ch. 226, § 27), was foreshadowed:

"Nor is it material that the defendant may have been guilty of a high degree of negligence. (*Messick v. McEntire*, 97 Kan. 813, 156 Pac. 740.) To warrant a reversal the court must declare as a matter of law that the injury resulted from his willful failure to use a guard and protection furnished by his employer. It has been said that in order to defeat an award because of a statutory exception, the case must be brought clearly within it (*Wick v. Gunn* [Okla.], 169 Pac. 1087), and that the mere voluntary and intentional omission of a workman to use a guard or protection furnished to·him is not necessarily to be regarded as willful. (Same case; also, *General American Tank Car Corp. v. Borchardt* [Ind.], 122 N. E. 433; to the contrary, see *Bay Shore Co. v. Industrial Acc. Com*, 36 Cal. App. 547.)" (*Thorn v. Zinc Co.*, 106 Kan. 73, 75, 186 Pac. 972.)

In harmony with the views expressed in the Indiana and Oklahoma cases cited, the court now holds that the meaning of the word "willful," as used in the statute, includes the element of intractableness, the headstrong disposition to act by the rule of contradiction. Such is a general and popular signification of the term.

"Governed by will without yielding to reason; obstinate; perverse; stubborn; as, a willful man or horse." (Webster's New International Dictionary.)

The judgment of the district court is affirmed.