NASHVILLE, C. & ST. L. RY. CO. *v.* WRIGHT.*

(*Nashville.* December Term, 1922.)

MASTER AND SERVANT. Compensation claimant held not guilty of ''willful failure'' to use safety appliance.

Where a railroad shopman, though furnished with goggles required by a posted safety rule, was not wearing them when he was hurt, and it appeared that he had neglected to read the rule, and had not been instructed as to its application to the job he was doing when injured, he was not guilty of "willful failure" to use a safety appliance within Workmen's Compensation Act, section 10, defeating recovery, "willful failure" meaning something more than negligence, and carrying the idea of deliberation and intentional wrongdoing.

Acts cited and contrued: Acts 1919, ch. 123, sec. 10.

Cases cited and approved: Wick v. Gunn, 66 Okla., 316; Bersch v. Morris & Co., 106 Kan., 800.

Case cited and distinguished: State v. Smith, 119 Tenn., 521.

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County.— HON. A. B. NEIL, Judge.

FRANK SLEMONS, WM. WALLER, SETH M. WALKER and FITZGERALD HALL, for appellant.

G. S. MOORE and JOHN H. DEWITT, for appellee.

---

*The provision in Workmen's Compensation acts denying compensation for injury through wilful failure to use guard, or safety appliance is discussed in notes in 9 A. L. R., 1377 and 23 A. L. R., 1172.

On what constitutes serious and wilful misconduct of employee within meaning of Workmen's Compensation act see notes in L. R. A., 1916A, 75, 243, 355; L. R. A., 1917D, 133; 4 A. L. R., 116.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a proceeding under the Workmen's Compensation Act (chapter 123 of the Acts of 1919). The plaintiff below was a steel worker in the employ of defendant railway, and lost his eye while engaged in the railway company's service. There was a statutory award in favor of the plaintiff, from which the defendant appealed in error to this court.

The employee was engaged with two other men in straightening an iron bar on the door of a freight car. He was holding a daddy maul against one side of the bar, another employee held a flatter against the other side, and a third employee was striking the flatter with a hammer weighing about eleven pounds. A sliver flew off the flatter and pierced the eyeball of the plaintiff, making its removal necessary.

Section 10 of chapter 123 of the Acts of 1919 is as follows:

"Be it further enacted, that no compensation shall be allowed for an injury or death due to the employee's willful misconduct or intentional self-inflicted injury, or due to intoxication, or willful failure or refusal to use a safety appliance or perform a duty required by law. If the employer defends on the ground that the injury arose in any or all of the above-stated ways, the burden of proof shall be on the employer to establish such defense."

There was posted on the bulletin boards in the shops of the railway company where the plaintiff was employed a circular containing the following:

"All Concerned:

"Some of our shopmen are paying little or no attention to our repeated instructions in connection with use of safety goggles.

"Goggles must be worn by all workmen when chipping, using air motors, drilling, sledging of any kind, when using emery wheels, electric welders, or any work where their duties require that their eyes be protected from flying particles.

"There is no excuse for ninety-nine per cent. of eye injuries sustained by our employees. We are anxious to eliminate such injuries, and employees as well as foremen should call one another's attention to such matters when they notice one of their follow employees taking chances and not in line with safety first.

"Am sending you extra copies of this circular to be posted on your bulletin boards.

"Acknowledge receipt.

"Yours truly,

J. J. SULLIVAN,
"Supt. of Machinery."

Pictures of accidents showing the benefit from and the necessity of wearing goggles were constantly posted on the bulletin boards.

Although the plaintiff had been furnished with goggles and had them with his tools near at hand, he was not wearing them at the time of this accident. The railway company insists that he was doing "sledging" work when hurt, and that his failure to wear his goggles at this time was a willful failure to use a safety appliance provided for him, and that under the statute he was not entitled to compensation.

There was considerable proof introduced by the plaintiff below tending to show that the work in which he was employed when hurt was not known among the employees as "sledging," but as "striking." These witnesses say that a hammer such as was used in this operation was known

as a striking hammer, and that hammers heavier than this were known as sledge hammers; that accordingly work done with the lighter hammers, such as here employed, was not sledging, and therefore not within the scope of the rule quoted. While there is a conflict in the testimony on this point, nevertheless, as the trial judge accepted the theory of the plaintiff below, we must do likewise on this appeal in error.

This theory of the plaintiff is strongly reinforced by a report of the accident signed by his foreman and one of the workmen shortly thereafter. This report seems to have been filed with the proper official of the railway company. It was not produced at the hearing, but its contents were proven. The accident was described in the report as not having occurred in a "sledging job."

If, however, the rule covered the case before us, we do not think the result would be different. The plaintiff testifies that he had never seen the printed rule, and other employees testify to the same effect. The plaintiff said he had been instructed by his foreman to wear goggles when "chipping" steel, cutting rivets, and perhaps in other work, but had never been told to use goggles about such work as he was doing when injured. Other witnesses corroborate the plaintiff in saying that goggles were not ordinarily worn by men engaged in this character of work, and they say that the foreman himself helped about such work without wearing goggles.

Proof introduced by the railway company shows that an accident like this may result to those engaged in such work without goggles. None of the railway company's records, however, show that such an accident has heretofore happened to its employees engaged in such work.

Since the plaintiff had not read the order and had not been instructed with reference to its application to the work in hand, he cannot be said to have willfully transgressed it. He may have been negligent in not reading the posted order, but negligence is not the equivalent of willfulness.

"Willfully means intentionally; that is the person doing the act intended at the time to perform that act." *State* v. *Smith,* 119 Tenn., 521, 105 S. W., 68.

The plaintiff could not have intended to disregard a safety appliance rule in a case to which he did not know the rule was applicable.

But beyond all this, as used in this connection in workmen's compensation statutes, according to the great weight of authority, "willful failure" to observe a rule or use a safety appliance is not a mere voluntary failure. Otherwise contributory negligence would defeat a recovery under a compensation statute. Willful misconduct means something more than negligence. It carries the idea of deliberation and intentional wrong-doing. Bradbury's Workmen's Compensation Law (3d Ed.), p. 531; *Wick* v. *Gunn,* 66 Okl., 316, 169 Pac., 1087, 4 A. L. R., 107; *Bersch* v. *Morris & Co.,* 106 Kan., 800, 189 Pac., 934, 9 A. L. R., 1374. See cases collected in notes 4 A. L. R., 116, and 9 A. L. R., 1377.

This record does not present a case in which it appears that the employee deliberately and intentionally disobeyed a rule of his employer or deliberately and intentionally failed to use a safety appliance which he knew had been provided for such work as that in which he was engaged. The case therefore does not fall within the exception to the operation of the statute relied on by the railway company, and the judgment below is accordingly affirmed.