# L. G. EZELL v. HALE C. TIPTON.*

## (*Jackson.*   April Term, 1924.)

1. **MASTER AND SERVANT.** Compensation Act held to apply to employers of not less than five persons for pay.

Acts 1923, chapter 84 section 2, amending Workmen's Compensation Acts, section 2, *held* to make it apply to employers employing not less than five persons for pay, though not expressly amending section 6, subsec. (d) of original act, stating persons to whom act did not apply, having that effect by implication. (*Post, pp.* 305-309.)

Acts cited and construed: Acts 1919, ch. 123; Acts 1923, ch. 84, sec. 2.

2. **MASTER AND SERVANT.** Compensation claimant's failure to give notice held excused.

Employer's promise of continued employment and his subsequent conduct *held* to excuse employee's failure to give written notice of accident within thirty days as required by Workmen's Compensation Act, section 22. (*Post, pp.* 309-312.)

3. **MASTER AND SERVANT.** Compensation claimant's failure to use safety appliance held not "willful" misconduct.

Compensation claimant's failure to use safety appliance *held* mere negligence and not willful misconduct, or willful failure or refusal to use a safety appliance; "willful" meaning intentionally. (*Post, pp.* 312.)

4. **MASTER AND SERVANT.** Wearing of gloves by ginner injured by saws held not to preclude compensation.

That one employed around gin saws wore buckskin gloves with loose and flappy cuffs while cleaning lint cotton from the gin saws *held* not to preclude compensation, in absence of showing that gloves contributed to injury or were worn in willful violation of instruc-

---

*On effect of provisions denying compensation for injury through wilful failure to use guard, or safety appliance, see notes in 4 A. L. R., 116, 9 A. L. R., 1377.

Ezell v. Tipton.

tions, and where it appeared that the wearing of them was only negligence at the most. (*Post, pp.* 312-315.)

Cases cited and approved: Railroad v. Wright, 147 Tenn., 619; State v. Smith, 119 Tenn., 521; Wick v. Gunn, 66 Okla., 316; Bersch v. Morris & Co., 106 Kan., 800; Bohlen-Huse Coal & Ice Co. v. McDaniel, 148 Tenn., 628.

5. **MASTER AND SERVANT.**  Order allowing employer credit towards compensation of only half of regular weekly wage paid after injury held warranted.

Where injury incapacitated petitioner from continuing employment with defendant as ginner, but petitioner performed other work for defendant, not shown to be worth less than $12 a week, for which employer paid him $24 a week for twelve weeks, order allowing defendant credit for twelve weeks at $12 a week instead of $24 would not be disturbed. (*Post, p.* 315.)

6. **MASTER AND SERVANT.**  Employer paying for medical attention held not entitled to credit for amount exceeding statutory liability.

An employer incurring voluntarily and for humane reasons an expense of over $100, required by Workmen's Compensation Act, in giving surgical and medical attention to his injured employee *held* not entitled to credit for amount in excess of $100. (*Post, pp.* 315, 316.)

7. **MASTER AND SERVANT.**  Trial court's conclusion that amputation of arm below elbow caused loss of hand only not disturbed.

Trial court's conclusion that amputation of petitioner's right arm two inches below elbow, which made elbow stiff, constituted loss of hand only and not of arm, within Acts 1919, chapter 123, section 28, would not be disturbed on appeal, in view of his observation of arm and its use. (*Post, pp.* 316-318.)

HALL, J., dissenting in part.

Case cited and approved: American Zinc Co., v. Lusk, 148 S. W., 220.

Case cited and distinguished: Hartford Hosiery Mills v. Jernigan, 259 S. W. 546.

*Headnotes 1. Workmen's Compensation Acts, section 36; 2. Workmen's Compensation Acts, section 102 (1925 Anno); 3. Workmen's Compensation Acts, section 78; 4. Workmen's Compensation Acts, section 78; 5. Workmen's Compensation Acts, section 99 (1925 Anno); 6 Workmen's Compensation Acts, section 99; 7. Workmen's Compensation Acts, section 144.

## FROM LAKE.

Appeal from the Circuit Court of Lake County.—Hon. Robt. A. Elkins, Judge.

Burnett & Donaldson, for plaintiff.

C. B. Tipton and Draper & Rice, for defendant.

Mr. Justice Hall delivered the opinion of the Court.

L. G. Ezell filed his petition in the circuit court of Lake county under chapter 123 of the Acts of 1919, as amended by chapter 84 of the acts of 1923, known as the Workmen's Compensation Act, seeking to recover compensation of the defendant, Hale C. Tipton, for an injury sustained by him while in the employ of defendant and working in his cotton gin at Tiptonville, Tenn.

Petitioner was employed by defendant in the capacity of a ginner, and on September 27, 1923, while cleaning lint cotton from under the gin saws, which were in rapid motion, with a short stick, his hand was caught in the rapidly revolving saws and his forearm and hand were so badly mangled and lacerated that it was necessary to amputate his arm about two inches below the elbow.

Petitioner's petition alleged that defendant had in his employ, at the time of said accident, more than five persons regularly employed, and that petitioner, under the provisions of the Workmen's Compensation Act, as amended by chapter 84 of the Acts of 1923, was entitled to compensation for two hundred weeks (less twelve weeks), at the rate of $12 per week; petitioner's regular weekly wage being $24 per week at the time of his injury.

It is conceded by defendant that the injury to petitioner arose out of and in the course of his employment, but in his answer sets up the following defenses to petitioner's right to recover compensation:

(1) That the Workmen's Compensation Act, as amended, did not apply to defendant's gin operation before and at the time of petitioner's injury; that the amendatory act failed to amend the original act so as to make its provisions apply to an employer working less than ten persons.

(2) That petitioner was not entitled to recover of defendant compensation for his injury because he had failed to give him notice of the injury as required by section 22 of the original act.

(3) That petitioner was not entitled to recover because his injury was the result of his own willful misconduct in failing to use a certain safety appliance in the operation of the gin, and in failing to use a long stick, which was kept for the purpose of enabling the operator of the gin to clean lint cotton from about the saws with absolute safety; that petitioner was also guilty of willful misconduct in refusing to obey the instructions of defendant, or his foreman in charge of the gin, not to wear long, heavy buckskin gloves while operating the gin, and

that these several willful acts were the direct and proximate cause of petitioner's injury.

The case came on to be heard before the court at the March term, 1924, when the court decreed that petitioner was entitled to recover of defendant for the loss of his hand, and awarded him compensation for a period of one hundred fifty weeks at $12 per week. The court, however, gave defendant credit for a period of twelve weeks at $12 per week, which covered the period from the date of plaintiff's injury up until Christmas, 1923; it appearing that defendant had paid petitioner his full weekly wage during that period. The evidence shows that these payments, however, were not made by defendant, nor were they received by petitioner, as payments under the Workmen's Compensation Act; but were made by defendant pursuant to an agreement with petitioner made immediately after the injury that he would pay petitioner full time during his term of employment, which was from August 1, 1923, till Christmas, 1923.

From the trial court's judgment both defendant and petitioner have appealed to this court. Defendant appealed from the entire judgment, and petitioner appealed from so much of the judgment as refused him compensation for the loss of an arm, and confined his compensation to the loss of a hand merely.

Both petitioner and defendant have assigned errors, which we shall proceed to consider. We will consider and dispose of defendant's assignments of error first.

We will first dispose of defendant's assignment of error to the effect that the court erred in not holding that chapter 84 of the Acts of 1923 failed to amend chapter 123 of the Acts of 1919, known as Workmen's Compen-

sation Act, so as to make it apply to employers using the services of not less than five persons for pay.

Section 2 of the original act of 1919 provides as follows:

"Be it further enacted, that in this act, unless the context otherwise requires:

"(a) 'Employer' shall include any individual, firm, association or corporation, or the receiver, or trustee of the same, or the legal representatives of a deceased employer, using the services of not less than ten persons for pay. If the employer is insured it shall include his insurer, unless otherwise herein provided."

Section 3 of said act reads: "Be it further enacted, that from and after the taking effect of this act, every employer and every employee, except as herein stated, shall be presumed to have accepted the provisions of this act, respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment, and shall be bound thereby, unless he shall have given prior to any accident resulting in injury or death, notice to the contrary in the manner herein provided."

Section 6 provides: "Be it further enacted, that this act shall not apply to:

"(a) Any common carrier doing an interstate business while engaged in interstate commerce.

"(b) Any person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession or occupation of the employer.

"(c) Domestic servants and employers thereof; nor to farm or agricultural laborers and employers thereof.

150 Tenn.—20.

"(d) In cases where less than ten persons are regularly employed; provided, however, that in such cases the employer may accept the provisions of this act by filing written notice thereof with the state factory inspector at least thirty days before the happening of any accident or death, and may at any time withdraw the acceptance by giving like notice of withdrawal."

By section 2 of the amendatory act (chapter 84, Acts of 1923), it is provided as follows:

"Be it further enacted that said act be and the same is hereby amended by striking out in line 5 of paragraph (a) of section 2 of the said act the word 'ten' and substituting therefor the word 'five.'"

This amendment makes section 2 of the original act read as follows:

"(a) 'Employer' shall include any individual, firm, association or corporation, or the receiver, or trustee of the same, or the legal representatives of a deceased employer, using the services of not less than five persons for pay. If the employer is insured it shall include his insurer, unless otherwise herein provided."

It will be noted that the next section, section 3 of the original act, provides that from and after the taking effect of said act every employer and every employee, except as stated in said act, shall be presumed to have accepted its provisions, respectively, to pay and accept compensation for personal injury or death arising out of and in the course of the employment, and shall be bound thereby, unless he shall have given prior to any accident resulting in injury or death, notice to the contrary in the manner provided in said act.

It would therefore seem that the legislature, in the amendment above set out, has expressed in plain terms the intention and purpose of making the Compensation Act apply to all employers using the services of not less than five persons. It is true that the amendatory act does not in express terms specifically refer to and undertake to amend section 6, subsec. (d), of the original act, which provides that the act shall not apply in cases where less than ten persons are regularly employed; but the intention and meaning of the legislature is clear and can be easily determined from the language of the amendatory act.

In 25 R. C. L., 960, it is said: ''In the interpretation and construction of statutes the primary rule is to ascertain and give effect to the intention of the legislature. As has frequently been stated in effect, the intention of the legislature constitutes the law. All rules for the interpretation and construction of statutes of doubtful meaning have for their sole object the discovery of the legislative intent, and they are valuable only in so far as, in their application, they enable us the better to ascertain and give effect to that intent. Even penal laws, which it is said should be strictly construed, ought not to be so construed as to defeat the obvious intention of the legislature.''

Section 6 of the original act was intended to make it clear just what persons or corporations were not bound by the act, and therefore repeated the provision already set out in section 2, but stated in the negative form, to the effect that when ten men are employed the act applies, and when less than ten are employd it shall not

apply, unless the employer accepts its provisions as provided for in the latter part of said section.

Any other construction of the amendatory act would render it meaningless. If the construction insisted upon by counsel for defendant were adopted, section 3 of the original act, which makes it applicable and requires the payment of compensation, as amended, would, in effect, provide that every employer using the services of not less than five persons for pay, and every employee, except in cases where less than ten persons are regularly employed, shall be presumed to have accepted the provisions of the act, respectively, to accept and pay compensation, etc. Of course, such construction would be absurd, and it cannot be supposed that the legislature intended any such absurdity.

We think, therefore, that it was the manifest intention of the legislature, as expressed in section 2 of the amendatory act, to amend the original act so as to make it apply to employers using the services of not less than five persons for pay; and, while the amendatory act did not expressly amend subsection (d) of section 6 of the original act by striking out the word "ten" where it appears in the first line of said subsection and inserting the word "five," it had the effect of doing so by implication. We therefore hold that the act, as amended applies to employers using not less than five persons for pay. The evidence in the instant case shows that the defendant had more than five persons regularly employed at his gin at the time petitioner sustained his injury.

It is next insisted by defendant that the court erred in allowing petitioner compensation for the reason that he

had failed to comply with the provisions of the act with respect to giving defendant thirty days' notice of his injury; it being insisted that the proof failed to show any reasonable or satisfactory excuse for the failure to give such notice.

Section 22 of the act requires every injured employee to give notice of the injury immediately or as soon thereafter as is reasonable or practicable unless the employer had actual knowledge of the accident and that no compensation shall be payable under the provisions of the act unless such written notice is given the employer within thirty days after the occurrence of the accident unless reasonable excuse for failure to give such notice is made satisfactory to the tribunal to which the claim for compensation may be presented.

There was evidence offered by petitioner which tended to show that defendant learned of the accident within a few minutes after it occurred and employed physicians to give petitioner treatment and was present when they dressed his hand and arm and prepared him for removal to a hospital in the city of Memphis where he could secure proper and adequate surgical treatment. Defendant accompanied petitioner to Memphis, employed a surgeon to treat his injury, engaged a room at a hospital for him, and remained at the hospital while petitioner's hand was being amputated. He paid his hospital and surgical bills. There is also evidence tending to show that defendant agreed to continue petitioner in his employ indefinitely at his regular weekly wage of $24 per week after his recovery from the injury sustained. On this point petitioner testified as follows:

"Mr. Tipton told me there was plenty of work for me to do; that I would be just as valuable to him; that I would have to use my head instead of my hands; to work right on; that I would be worth as much to him then as I had been; there was plenty of work to keep me employed; to go right on the same as if nothing had happened; and I supposed that was what he was going to do."

Petitioner further testified as follows: "He said I could work for him a year or two and learn the business over there (in Missouri), and I will start you out for yourself. That is the very words he told me in the store."

Petitioner further testified: "Q. Did he say anything to you within thirty days about not going to give you employment?

"A. No, sir; he said he was—that I had a job and not to worry about it."

These statements of petitioner are corroborated by the witness, Alex Ezell, the father of petitioner, who testified that defendant made substantially the same statements to him while petitioner was at the hospital in Memphis. Petitioner's testimony is also corroborated by J. M. Lowrence, defendant's gin superintendent, who testified that he heard defendant say he was going to take care of petitioner.

In addition to this, the evidence tends to show that defendant continued to pay petitioner his regular weekly wage under the original contract, although he was under no legal obligation to do so because of petitioner's incapacity to continue his employment after the accident.

He paid him the full wage of $24 per week for twelve weeks following the accident, petitioner performing such services as his physical condition permitted, such as clerking in defendant's store, collecting bills, advertising defendant's merchandise, etc.; that defendant kept petitioner in his employ and paid him his regular weekly wage until after the time for giving written notice had expired, when he discharged petitioner and ceased to pay him further wages. Defendant says he discharged petitioner because he found him drinking upon one occasion and also because he took some articles from the store without charging himself with them. This is positively denied by petitioner. He denies that he was drinking or under the influence of intoxicating liquor, and denied taking any articles from defendant's store with which he did not charge himself.

We think the evidence tends to show that petitioner was misled by the promise of defendant to continue him in his employ, made immediately subsequent to the injury, and that petitioner's failure to give the statutory notice cannot be relied on by defendant. We think the promise and subsequent conduct of defendant afforded a reasonable excuse for failure to give defendant written notice of the accident, and that the trial court was correct in so holding.

It is next insisted that the court erred in not refusing to allow petitioner compensation, for the reason that he willfully failed and refused to use a safety appliance in two particulars: First, the lever situated on the right-hand side of the gin stand, designed and located for the express purpose of stopping the gin machinery when it

became necessary for the operator to clean or do any work about the gin and machinery; and, second, in failing to use the long stick kept for use by the operator of the gin in cleaning lint cotton from under the gin saws, which it is claimed could have been used by petitioner without danger of being caught or entangled in the gin machinery.

Also by the tenth assignment of error it is insisted that the court erred in not disallowing petitioner's claim for compensation because he wilfully and deliberately wore heavy buckskin gloves with large, loose, and flappy cuffs, in violation of the instructions of his superior, and when he knew the danger incident to wearing them while operating the gin.

These assignments are not well taken. There is no evidence in the record tending to show that petitioner's injury was the result of willful misconduct, or that the injury was intentionally self-indicted, or due to his willful failure or refusal to use a safety appliance. At most, petitioner's failure to use such appliance was mere negligence.

In *Railroad* v. *Wright,* 147 Tenn., 619, 250 S. W., 903, where the evidence showed that there was posted on the bulletin boards in the shops of the railroad company the rule requiring the use of goggles by its shop employees, and, although the plaintiff had been furnished goggles, he was not wearing them at the time of the accident, this court held that, although he may have been negligent in not reading the posted order, negligence is not the equivalent of willfulness. "Willfully" means intentionally; that is, the person doing the act intended at the time to

perform that act. *State* v. *State,* 119 Tenn., 521, 105 S. W., 68.

The court, speaking further on the question of plaintiff's willful failure to observe the rule, or use the goggles which had been furnished him by his employer, said:

"But beyond all this, as used in this connection in workmen's compensation statutes, according to the great weight of authority, 'willful failure' to observe a rule or use a safety appliance is not a mere voluntary failure. Otherwise contributory negligence would defeat a recovery under a compensation statute. Willful misconduct means something more than negligence. It carries the idea of deliberation and intentional wrongdoing. Bradbury's Workmen's Compensation Law (3d Ed.), p. 531; *Wick* v. *Gunn,* 66 Okl., 316, 169 Pac., 1087, 4 A. L. R., 107; *Bersch* v. *Morris & Co.,* 106 Kan., 800, 189 Pac., 934, 9 A. L. R., 1374. See cases collected in notes 4 A. L. R. 116, and 9 A. L. R., 1377." 147 Tenn., 623, 250 S. W., 904.

In *Bohlen-Huse Coal & Ice Co.* v. *McDaniel,* 148 Tenn., 628, 257 S. W., 848, the deceased was killed while driving a motor truck in the service of defendant as the result of a collision between that vehicle and another. The trial judge found that deceased was not operating the motor truck in conformity to the ordinances of the city of Memphis, but concluded that his conduct was negligent and not willful, and allowed compensation. The judgment was affirmed by this court.

Nor do we think that the trial court erred in not disallowing petitioner's claim for compensation because he was wearing gloves with large, loose, and flappy cuffs at the time he was injured.

There is no evidence tending to show that the wearing

of these gloves in any way contributed to his injury. Furthermore, it appears from the evidence that the wearing of these gloves, at most, was only negligence. There is no evidence that it was done in willful violation of defendant's instructions.

It is next insisted that the court erred in allowing petitioner compensation for one hundred fifty weeks, with a credit for twelve weeks, at only $12 per week, when during said twelve weeks defendant paid petitioner his regular weekly wage of $24 per week, and it is insisted that defendant should have been given credit for the sum of two hundred eighty-eight dollars instead of one hundred forty-four dollars for that reason.

The evidence tends to show that petitioner, upon his return from the hospital, was incapacitated to continue his work as a ginner in defendant's gin, but he did, in fact, perform other work for defendant, such as clerking in his store, collecting bills, advertising his merchandise for him, etc. He did everything that his employer asked him to do. We cannot, therefore, say that petitioner was not entitled to compensation in addition to the fifty per cent. of his regular weekly wage. He was entitled to receive fifty per cent. of his regular weekly wage from defendant under the Workmen's Compensation Act without performing any service whatever. Certainly the services which petitioner performed as clerk in defendant's store, collecting bills, and advertising for defendant, was worth something. The evidence does not show that it was worth less than fifty per cent. of the wage received by petitioner before his injury.

Defendant also claims that he expended the sum of $324.40 in cash for surgical and medical attention to

petitioner, whereas the act limits the employer's liability to $100.

It is true that defendant could not have been required to spend more than $100, but the evidence shows that what he spent in excess of that amount was altogether voluntary on his part. We are of the opinion that defendant was not entitled to credit for this item. He admits that he made these expenditures for purely humane reasons, and that they were entirely voluntary.

We now come to a consideration of petitioner's assignments of error.

It is first insisted by petitioner that the court erred in holding and decreeing that petitioner was entitled to compensation for only one hundred fifty weeks at $12 per week (less a credit for twelve weeks), when the undisputed evidence showed that petitioner was entitled to recover compensation for two hundred weeks at $12 per week, less a credit for twelve weeks, because the undisputed evidence shows that he lost, an arm instead of a hand in the sense and meaning of the statute.

The evidence showed that it was necessary to amputate petitioner's arm two inches below the elbow, as before stated. The evidence also shows that it was his right arm, and that the elbow joint is now stiff. As to his ability to use his arm, petitioner testified as follows:

"Q. Have you any use of that arm; since it was amputated has it been any service to you?

"A. No, sir.

"Q. Can you use it for the purpose of making a livelihood?

"A. No, sir; not that I have been able to find."

The statute provides a schedule of compensation for

the loss of various members, and at the end of the schedule it is provided as follows:

"In all cases the permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member." Section 28, Acts of 1919.

The injury which petitioner sustained, by its very nature, is permanent, and in passing on what is meant by the "total loss of the use of a member," this court has defined that expression recently in the case of *Hartford Hosiery Mills* v. *Jernigan*, reported in 259 S. W., 546. In that case the court said:

"In *American Zinc Co.* v. *Lusk*, supra, this court ruled, in effect, that giving application to that equitable construction required by the express terms of the act, an employee suffers total disability as to the members or faculties injured whenever his capacity to earn by the use of those members or faculties has been practically destroyed. A showing of income earning capacity by the use of other faculties, or members of the body, will not reduce the grade of the injury of the affected members or faculties, or the compensation provided.

"This principle is applicable in the instant case, it being insisted that both feet of the employee are permanently injured, and disabled to such a degree that he can engage profitably in no employment in which the use of these members is to any substantial degree essential.

"For remunerative purposes this employee's feet have been practically destroyed, according to some of the evidence. In *American Zinc Company*, supra, it was said that 'there is much authority for the general rule that the award may be for total disability whenever the

faculty or member of the body, or the use thereof, is prac-
tically destroyed.'

"The principle underlying this legislation is substitu-
tion of compensatory income for loss of earning capacity,
proportioned to the loss of the contributory income-earn-
ing power of the particular member or faculty injured.
If the hand is so injured that it can no longer contribute
to the employee's income-earning capacity, then, whether
severed or not, however injured, there is total disability
as to the hand. And so of other members and faculties."

To the same effect is the rule announced in *American
Zinc Co.* v. *Lusk,* 148 S. W., 220, 255 S. W., 39.

The majority of the court is of the opinion that the
principle announced in the above cases is not controlling
in the case under consideration, in view of the fact that
it cannot be said that there is no evidence sustaining the
conclusion of the trial judge that petitioner has not
totally lost the use of his arm. It is said that the trial
judge saw petitioner, and was in a position to observe
his arm, and the use he had of it, and, having found that
there was not a total loss of the use of that member, but
that petitioner had only lost a hand, the judgment must
be affirmed.

In this view the writer does not concur. I am of the
opinion that the undisputed evidence shows that petition-
er has lost, in so far as practical uses and purposes are
concerned, his arm, and is entitled to compensation for
the loss of an arm.

The judgment is affirmed, with costs against defend-
ant.