WESTERN CLAY & METALS CO et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4550.   Decided September 2, 1927.   (259 P. 927.)

*Henry D. Moyle,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

CHERRY, J.

This is a proceeding to review an award of compensation to an injured employee, under the Workmen's Compensation Act (Comp. Laws 1917, §§ 3061-3165).

On January 10, 1926, Frank Nelson, while employed by the Western Clay & Metals Company at its plant in Aurora, Utah, sustained an accidental injury which resulted in a total disability of his right hand. The employee was greasing an unguarded gear, using a tin ladle for the purpose, and wearing gloves. The point of the tin ladle became engaged in the gear, and the other end caught in the employee's glove and drew his hand into the gear, resulting in the injury. Liability for compensation was admitted by the employer and its insurer, subject to the claim that the normal amount thereof should be reduced 15 per cent because of the claim that the employee willfully failed to obey an order or rule of the employer that in greasing the gear in question employees should not wear gloves and should use wooden paddles only. On the other hand, the employee asserted a claim for an increase of 15 per cent of compensation, as provided for in section 3072 of the Workmen's Compensation Act, upon the grounds that the injury was caused by the willful

failure of the employer to comply with a lawful order of the commission, which it is claimed required the gear in question to be guarded.

A hearing was had before the commission upon the respective claims for reducing and increasing the amount of compensation, at the conclusion of which the employer's claim for reduction was denied and the employee's claim for an increase allowed. Compensation was awarded at the rate of $15.42 per week for a specified number of weeks. The rate of compensation, computed in the normal manner of taking 60 per cent of the employee's average earnings, amounted to $13.41 per week, which, with the increase of 15 per cent, made the rate awarded.

The employer and the insured have brought the matter here by writ of review, complaining that the commission acted without and in excess of its powers in awarding an increase of 15 per cent in the amount of the normal compensation, as above stated. No complaint is here made of the refusal to reduce the compensation.

The increase of the compensation complained of was made under the authority of Compiled Laws Utah 1917, § 3072, as amended by chapter 67, Laws of Utah 1921, which provides:

"* * * Where injury is caused by the wilful failure of the employer to comply with any statute of the state or any lawful order of the Industrial Commission, compensation as provided in this act shall be increased fifteen per cent, except in case of injury resulting in death."

The commission found, in substance, that the employer had willfully failed to comply with certain general safety orders previously adopted by the commission. The validity of this finding is challenged by the plaintiffs upon the ground that there is no evidence to support it. The facts in the case are not disputed. The employer's plant had been constructed but two weeks before the accident. The unguarded gear or cog in which the employee's hand was

injured was on a main drive shaft, and was situated at an elevation of seven or eight feet above the floor of the plant. It was not exposed to contact except when being greased. Previous to the accident, the general manager directed a carpenter to build a guard for the gear, but the carpenter failed and neglected to do so at the time because the material he wanted was not then accessible. A day or two after the accident a guard was constructed for the gear. General safety orders of the commission previously adopted required that "all power driven gears, where exposed to contact, must be adequately guarded, or equipped with side flanges extending inward beyond the point of the teeth." Actual knowledge or notice of these orders by the employer or its officers was not proved. Evidence of the employer's notice or knowledge of the order consisted of proof that at a previous time, and when inspecting the mine of another corporation at a different place, a metal mine inspector of the Industrial Commission handed to a Mr. Greenleaf, an employee of the mine then being inspected, a copy of the orders, and that Mr. Greenleaf was thereafter and at the time of the accident in question employed at the mine where the injury in controversy was sustained. There was also hearsay evidence that Mr. Bierce, the general manager of the plant at the time of the accident, had at a previous time and place, and when employed by another corporation, been handed a copy of the orders.

The question which must determine the controversy is whether from the foregoing uncontradicted facts the commission could find a willful failure of the employer to comply with the safety orders of the commission referred to.

In *Park Utah M. Co.* v. *Ind. Comm.*, 62 Utah 421, 220 P. 389, this court, in dealing with a similar question, held that the term "willful" as employed in the act implies something in addition to mere negligence, and said:

"It is probably not desirable * * * to include within a definition of those terms all of the elements or what particular elements in any

given case enter into a willful violation of the statute or of the commission's orders. The authorities, however, are agreed that negligence alone, or even gross negligence, is not sufficient to constitute 'willful failure' or 'serious failure' to comply with the requirements of the statute or orders of the commission. There is nothing in the findings or in the evidence before the commission to indicate or suggest that the plaintiff mining company or its superintendent was acting in disregard of the safety of its employees, or to indicate a willingness on the part of the superintendent to inflict injury upon the employees."

In *Wick* v. *Gunn*, 66 Okla. 316, 169 Pac. 1087, 4 A. L. R. 107, the term "wilful failure," as used in the Workmen's Compensation Act, as applied to the conduct of an employee, was held to mean, not merely voluntary and intentional, but to carry with it the idea of premeditation, obstinacy, and intentional wrong doing.

In *Bersch* v. *Morris & Co.*, 106 Kan. 800, 189 P. 934, 9 A. L. R. 1374, the court said that the meaning of the words "willful failure" is not necessarily fulfilled by voluntary and intentional omission, but includes the element of intractableness, the headstrong disposition to act by the rule of contradiction.

In *Nashville, C. & St. L. Ry. Co.* v. *Wright,* 147 Tenn. 619, 250 S. W. 903, the words were interpreted to mean something more than negligence and carrying the idea of deliberation and intentional wrongdoing.

See, also, Bradbury's Workmen's Comp. Law (3d Ed.) 53, and annotations 4 A. L. R. 116, 9 A. L. R. 1374.

We are unable to find any evidence in the record which supports the finding that the employer willfully failed to comply with the orders of the commission. In addition to the unsatisfactory evidence that the employer had knowledge or notice of the safety orders, it is not entirely clear that the orders required the gear in question to be guarded. The gear was situated seven or eight feet above the floor, and was not exposed to contact except when being greased.

There was at least sufficient uncertainty in this respect to preclude the failure to guard the gear from being a willful failure within the spirit and meaning of the law. Besides, the uncontradicted evidence was that the general manager directed a guard to be constructed, but that the carpenter delayed doing it for a short time because of lack of suitable material. This fact negatives any intentional or deliberate purpose to leave the gear unguarded, and reduced the act of omission to mere neglect.

The order of the commission increasing the award 15 per cent. is annulled.

THURMAN, C. J., and GIDEON, STRAUP, and HAN-SEN, J.J., concur.