## COLE v. LIST & WEATHERLY CONST. CO. et al.*

### No. 4832.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1934.

Rehearing Granted July 16, 1934.

---

forms into which they had been poured. These forms, about 26 feet high, were braced on their sides by two pieces of 4x8 timber over 40 feet long, crossed in the shape of an X, secured at their ends to the corners of the form and fastened together at their intersection by a bolt.

At the time of the accident two of the gang on top of the pier had loosened the two ends of this brace and were holding it with ropes thrown around these ends, awaiting the knocking out of the intersection bolt before lowering the timbers to the ground. The duty of separating the timbers by driving a wedge between them fell upon Cole and the fourth member of the crew. Despite instructions to use a ladder which was available, and the warnings of his co-workers, he elected to dispense with the ladder and to climb up on the timbers to knock out the bolt. As soon as the timbers were freed they turned, throwing him, from a height of about 11 feet, to the ground, breaking his arm and allegedly causing other injuries, for which he sues and for which he was denied compensation in the lower court.

As the accident clearly occurred in the course of and arose out of his employment, there being no element of turning aside to do some forbidden act, defendant's only defense outside of the question of injury is based upon the following provision of Act No. 20 of 1914:

"Section 28. 1. Be it further enacted, etc., That no compensation shall be allowed for an injury caused * * *

"(3) By the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him. * * *

"2. In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proofs shall be upon the employer."

William C. Boone, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellee.

MILLS, Judge.

Plaintiff, a carpenter, was employed by defendant, List & Weatherly Construction Company, to work on the construction of the Texas Street bridge over Red river at Shreveport. On March 18, 1933, he was one of a gang of four which was engaged in tearing away from the concrete piers the wooden

█ Plaintiff contends that the ladder was too short for the purpose, and therefore, in any event, inadequate, but we find that the testimony largely preponderates to the contrary.

█ The next question is whether or not the ordinary ladder is a guard and protection within the meaning of the statute. Defendant rests its case upon two decisions of our courts, viz.: Carter v. Christ (La. App.) 148 So. 714, and Daigle v. Moody, 175 La. 853, 144 So. 596.

In the former case deceased was on a scaffold engaged in painting a building. To protect him from falling, and not in any way as a means or method of doing his work, his employer furnished a rope attached to the top of the building and intended to be fastened around the body of the workman. Because of his deliberate refusal to use this rope, his dependents were denied compensation for his fatal fall from the scaffold.

In the latter case his work required the employee to cross a river, for which purpose, and to his knowledge, a boat was furnished and was available. Instead of crossing in this comparatively safe way, he deliberately, and not because of any emergency arising in the course of his work, elected to ignore the boat and swim the stream. He was drowned in the attempt. The demand of his dependents for compensation was rejected upon the authority of the above-quoted provision of the act. This is such an extreme case that we are of the opinion that in reaching its decision the Supreme Court was influenced by the wanton and unreasonable action of the employee. We find much force in the dissent of the Chief Justice on the ground that a boat, vehicle, or other means of conveyance is not a safeguard. A boat is but a means of transportation over water, as the aeroplane is through the air. In the light of recent happenings, it is difficult to conceive of an aeroplane as a safeguard. The life belt in the boat and the parachute in the airship clearly come within that classification and illustrate the distinction.

We think that the holding as to the boat should not be extended to a ladder, which is simply a means by which a person ascends to a higher level, such as a stairway or an elevator. It differs from them only in that it is a movable means of accomplishing his work. It is furnished for that purpose and not as a protection. It might be safer for the small boy to use the ladder rather than climb the tree to reach the tempting cherry, but, on the other hand, it would be more dangerous for his less active father to attempt to reach the second story of his house by means of a ladder to the window rather than use the safer stairway. In the above two instances the parties may have shown bad judgment, even been negligent in choosing the more dangerous way, but certainly the ladder was not a guard in climbing the tree nor was the stairway a protection in climbing the ladder. A handhold on the ladder or a balustrade to the stairway would have been.

In applying the rule that the provisions of the Compensation Act are to be construed liberally, we think resort should be to common sense and not fine distinctions. In the common acceptance of the term, a ladder is not a guard or protection.

■ Plaintiff contends that, even if the above reasoning is unsound, the act of plaintiff in rejecting the ladder was not deliberate within the legal meaning of the term. We find a conflict in our authorities on this point.

In the case of Carter v. Christ, supra, it is held that "deliberate" is synonymous with "intentional," and that all that is required is that there is a safety guard available and that the employee knowingly fails to use it.

To the contrary, in McClendon v. Louisiana Central Lbr. Co., 17 La. App. 246, 135 So. 754, 756, the court adopts the following definition found in Webster's New International Dictionary: "Well-advised; carefully considered; not sudden or rash; weighing facts and arguments with a view to a choice of decision; carefully considering the probable consequences of a step; circumspect; slow in determining; to weigh in the mind; to consider the reasons for and against; to consider maturely; to regard upon; to ponder."

The former opinion adopts a strict construction; the latter a liberal one.

In many states compensation is denied where the injury results from willful misconduct of the workman. Under these statutes "willful" is construed to mean a premeditated, obstinate and intentional wrongdoing as distinguished from mere heedlessness or carelessness. Bersch v. Morris & Co., 106 Kan. 800, 189 P. 934, 9 A. L. R. 1377; 23 A. L. R. 1179; Imperial Brass Mfg. Co. v. Industrial Comm., 306 Ill. 11, 137 N. E. 411, 26 A. L. R. 166; King v. Empire Collieries Co., 148 Va. 585, 139 S. E. 478, 58 A. L. R. 197.

In our act there was no occasion to use the word "deliberate" unless it was intended to qualify the failure to use an adequate guard. We take the view that the word "deliberate" was used in the sense of willful rather than merely intentional. We think the broad meaning rather than the narrow should be applied.

■ In the present case there was no element of willfulness, though the failure to use the ladder was intentional. The workman was hurrying to tear down the forms. The ladder was against the pier, several feet from the intersection of the bracing timbers, and being used by the co-worker. We are satis-

fied that Cole, though warned by his co-workers and generally instructed to use the ladder, climbed the timbers with no other thought than to hasten and facilitate the work that he was employed to do. His action was ill-considered, negligent, and intentional, but not deliberate or willful.

■ It is well settled in this state that mere disobedience of orders as to how work should be done will not affect the right of the workman to compensation. Jones v. Landry, 10 La. App. 740, 122 So. 913; Farris v. Louisiana Long Leaf Lbr. Co., 148 La. 106, 86 So. 670; Sears v. Peytral, 151 La. 971, 92 So. 561; Cochran v. Canulette Shipbuilding Co., 157 La. 184, 102 So. 198.

■ Even if an act is done in disobedience of special rules and in spite of warnings, if it is done in an honest attempt to further that which he was employed to do, compensation is not barred, even if it is done in a more dangerous way. Choosing an unsafe appliance or way of doing the work does not necessarily involve a failure to use a safeguard.

Though the workman used a short stick instead of a long one, compensation was allowed in Ezell v. Tipton, 150 Tenn. 300, 254 S. W. 355.

Neither a long-handled maul or a switch to stop the machine was considered a safeguard in Thorn v. Edgar Zinc Co., 106 Kan. 73, 186 P. 972.

Jumping from a moving train, although gross negligence, is not failure to use a safeguard. May v. Louisiana Central Lbr. Co., 6 La. App. 748.

Feeding moss into the side of a machine instead of the front, contrary to instructions, not a deliberate failure to use a guard. Jones v. Landry, supra.

We then conclude that plaintiff should recover for whatever injury he suffered because of the accident.

■ Plaintiff fell a distance of about 11 feet. He claims that he landed in a sitting position. He was picked up, walked around, worked a while, and then went home. He complained only of his arm, which was skinned up. The fall occurred on Saturday, March 18, 1933. On the following Monday he was sent to Dr. Boyce, the company physician, who dressed and set his arm. He saw the doctor about twice a week until Saturday, April 15, at which time he was discharged and told to report back to work Monday. He was ready and willing to do this and reported to the office of the company that Saturday and was told that he could go back to work Monday, and left expecting to do that. Some time Saturday he became so drunk that passersby who saw him lying out in the rain on the courthouse square called an officer, who took him to the station. He was tried and fined $10. All the officers testify that he was extremely drunk. A cellmate says that in the jail he complained of having hurt his back and was given alcohol to rub on it. While his arm was mending, he went down to the job, walked, and sat around. He did not complain of his back, walked without a limp and without difficulty.

Dr. Boyce testifies that he gave no history of an injured back, else an X-ray would have been taken, and that his account was that he fell on his shoulder; that through all the four weeks of treatment he never complained of any back injury; that he left the office Saturday ready and willing to go back to work. This is completely corroborated by the testimony of the bookkeeper to whom he reported that day and by the admission of Cole himself that he went to the office and arranged to report Monday.

After being released from the jail Monday, he went to the Charity Hospital for an operation for piles. He remained there 16 days. No nurse or interne is offered to show that he complained to them of any back injury.

It is proven that at the time of trial, had June 23, 1933, he was suffering from traumatic spondylitis of the dorsal lumbar spine, a fracture of the body of the first lumbar vertebra, and a complete fracture and dislocation of the coccyx or lower tip of the spine. This is shown by an X-ray not taken until June 6, 1933, two and a half months after the accident. It is also, we think, shown that without a serious operation he is incapacitated to do work of any reasonable character.

The defendant contends strenuously that the back injury occurred during the drunken debauch or at some later time, and that plaintiff suffered no back injury in the fall and was suffering from none on Saturday, April 15, when he was discharged by Dr. Boyce and reported at the company's office for work. The very seriousness of his injury is defendant's main reliance.

Dr. Potts, for plaintiff, examined him June 7, 1933, found his condition as stated above, and says that a man in his shape should have been conscious of his back injury in from 24 to 72 hours; that the broken and dislocated coccyx at least would produce considerable pain and discomfort in moving about and sitting down.

Dr. A. A. Huckaby, also for plaintiff, examined him June 7th, and says that Cole should have been aware of his back injury immediately, and certainly within 2 or 3 days after its happening.

Dr. G. H. Cassity, who did not examine him until June 3, says that the coccyx was fractured and completely separated from the sacrum and deflected to the right to such an extent that it probably injured the rectum and caused the piles. He says that one suffering such·an injury should be immediately aware of it.

Dr. J. M. Gorton, who examined plaintiff for defendant, says that broken vertebra and coccyx should have been felt immediately and that it would be impossible to have these injuries over a period of 4 ·weeks without awareness and complaint; that he could not have sat down without being acutely aware of the broken and dislocated coccyx. He corroborates Dr. Boyce by saying that Cole reported to him that he fell on his shoulder from the brace.

Dr. T. J. Fleming, for defendant, says that the broken and dislocated coccyx was bound to cause intense and immediate pain, and that in sitting or moving about the pull of the muscles would make the injury apparent.

It is very singular that, though· suit was filed April 25, 1933, plaintiff does not produce a .single physician or radiologist who examined plaintiff before the following June.

In his petition plaintiff thus describes his accident and injuries:

"That on and about said March 18, 1933, your petitioner was employed by the said List & Weatherly Construction Company as a carpenter at the wage of Three Dollars ($3.00) per day for seven days per week, or for Twenty-One dollars ($21.00) per week of seven days, and while he was in· said employment and attending to his regular duties as a carpenter for said company at said place of business mentioned above, and while at that particular time he was wrecking forms, stripping braces and doing other work around Pier No. 19, your petitioner fell off the scaffold or frame work, on which he was standing, to the ground or rocks below, a distance of some ten or twelve feet, upon his back, arms, shoulder and body, breaking the small bone in his right arm near the wrist, jerking his neck, neck bone, muscles and parts around his neck and head, twisting his neck, back, backbone and hips, possibly fracturing one or more ribs, shoulder blade and other bones of his body, terribly bruising his body, both internally and externally, and your petitioner was most severely injured in parts of his body mentioned, as well as elsewhere in his spine, with torn ligaments all around his lower spine and pelvic bones, all to such extent that petitioner is yet this late day flat on his back in the Charity Hospital, Shreveport, Louisiana, unable to get about in any way whatsoever.

"Furthermore, that the said fall and accident has caused and brought about the piles, or a protrusion of the bowels from petitioner's body, all to such extent that petitioner cannot get about whatsoever.

"That petitioner feels and avers he will have arthritis of the lower lumbar spine and sacro-iliac joints, and that all of same is due to the aforesaid accident, and that petitioner is thereby permanently totally disabled to do work of any reasonable character."

It is apparent that at the time of the filing, of the petition plaintiff was unaware of any broken vertebra, and that he describes the fall as upon his shoulder; it being impossible to fall in a sitting position upon the posterior and upon the shoulder at the same time.

Our confidence in the testimony of plaintiff is considerably shaken by the fantastic and completely contradicted story that he tells about the arrest.

Only after the importance of showing prompt complaint does plaintiff in rebuttal offer several belated witnesses to prove such complaints.

Considering the expert testimony on both sides, which, for once, is in accord as to the certainty of immediate knowledge of the fractured and dislocated vertebra, and being satisfied from the testimony that. plaintiff had no knowledge of such injury until after April 15, when he reported for work, and on April 25, when his petition was filed, we are forced to conclude that his serious injuries were not caused by the fall on March 18.

The judgment appealed from, rejecting his demand, is accordingly affirmed.