CARTER v. CHRIST et al. (HAYGOOD, Intervener). *

No. 14490.

Court of Appeal of Louisiana. Orleans.

June 12, 1933.

*Rehearing denied June 29, 1933.

Alvin R. Christovich and Frank Doyle, both of New Orleans, for appellants.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellee.

JANVIER, Judge.

Henry Nelson Rhodes, an employee of Nick Christ, a contractor, while engaged in painting the side of an office building, fell to the ground from the suspended scaffold on which he had been working, and died as the result of the fall.

Gertrude Carter, claiming to be his widow, seeks, on her own behalf and for her minor child, the compensation to which, under the Workmen's Compensation Laws of Louisiana (Act No. 20 of 1914, as amended), a dependent widow and one child are entitled.

Rebecca Haygood, the mother of Rhodes, intervenes, and, asserting that Gertrude Carter is not the lawful widow of Rhodes, and that therefore neither the said Gertrude Carter nor the said minor child is entitled to compensation, herself claims the compensation to which, under the said laws of Louisiana, a dependent mother is entitled.

The said Rebecca Haygood bases her assertion that Gertrude Carter was not the lawful wife of Rhodes on the fact, which seems to be admitted, that, when the said Rhodes and the said Gertrude Carter were married, Rhodes was the lawful husband of one Annie Johnson, from whom he had never been divorced. Rebecca Haygood, the mother, maintains that Annie Johnson, the real widow of Rhodes, is not entitled to compensation, because, at the time of Rhodes' death, he and the said Annie Johnson had been living separate and apart for many years.

Defendants, Nick Christ, the employer, and Union Indemnity Company, the insurance carrier of Christ, refuse to make payment to any of the claimants. They aver that the accident resulted from the deliberate refusal of Rhodes to make use of an adequate safety guard furnished by the employer, and that therefore there can be no recovery by any one, because, in section 26 of the Workmen's Compensation Act, No. 20 of 1914 (as amended), it is provided "that no compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another, or (2) by the injured employee's intoxication at the time of the injury, or (3) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him or (4) by the employee's deliberate breach of statutory regulations affecting safety of life or limb." Defendants further resist the claims of Gertrude Carter, the alleged widow, and of her minor child, contending that the former was not the lawful wife of Rhodes, and that the latter is not his legitimate child, and they also assert that, even if the said Gertrude Carter, when she married the said Rhodes, was in good faith and did not know that his real wife was still living, nevertheless she, the said Gertrude Carter, cannot make such claim as is, under the law, available to a putative wife, because, for many months prior to the death of Rhodes, she, of her own volition, had been living separate and apart from him and was not dependent upon him.

Annie Johnson Rhodes, claiming to be the real widow, has filed a separate suit in the civil district court, and in that suit has claimed compensation for the death of Rhodes. It appears, from the record before us, that that suit is still pending in the civil district court.

From a judgment in favor of Gertrude Carter and her minor child, both defendants and the intervener, Rebecca Haygood, have appealed.

If, in fact, Rhodes deliberately failed to make use of an adequate safety guard, and if that defense is available to defendants in a case in which the employee is killed, then our investigation need proceed no further, since there can be no recovery by any one, and it will be unnecessary that we fix the relative rights among the various claimants, and we therefore first give consideration to this feature of the case.

We direct our attention to the contention presented by counsel for Gertrude Carter and her minor child, which contention, we believe, has not heretofore been considered by any court in this state, and which is that the defense made available by section 28 of the Compensation Act, as amended, to an employer whose employee is injured as a result of deliberate failure to use an adequate safety guard, is limited to cases in which the employee is injured and in which he himself brings suit for compensation based on the injuries, and is not available where the employee has been killed and the claim is made by surviving dependents.

This contention is based on the fact that in section 28 it is provided "that no compensation shall be allowed for an injury caused * * * by the injured employee's deliberate failure to use an adequate guard," etc. Counsel for plaintiff maintain that, if the framers of the statute had intended that that section should be available as a defense in a death case, they would have added after the word "injury" the further words "or death," and they assert that, since nowhere in that section of the act can be found either the word "death" or the words "death resulting from injury," it was intended by the framers that the section should apply only in a case in which the employee was injured and did not die.

This is a most interesting and ingenious contention, but we do not feel that it should prevail, because we note that the act uses the word "injury" throughout as the basis for recovery in all cases, whether the result of the injury be permanent disability, temporary disability, or death. In other words, if we refer to the earlier sections of the act, we find that it is provided that, "for injury producing temporary total disability," the recovery shall be in accordance with a certain fixed schedule. We also find that "for injury producing permanent total disability" the recovery shall be in accordance with a

certain fixed schedule. We also find that "for injury producing permanent total disability" the recovery shall be in accordance with a fixed schedule; that for injury producing partial disability the recovery shall be in accordance with another fixed schedule; and that "for injury causing death" compensation shall be paid in accordance with a certain fixed schedule, and to the dependents named in the act. Nowhere in the act is there sought to be drawn a distinction between the word "injury" and the word "death," and it is our belief that, when the framers of the act used the word "injury," as they did in section 28, they intended it to include all of the injuries referred to in the earlier sections of the act, to wit, "injury producing temporary total disability," "injury producing permanent total disability," "injury producing partial disability," and "injury causing death." It follows that, since deliberate failure to use an adequate safety guard may be set up as a defense in any suit for compensation for injury, the said defense may be made use of either in a case in which the injury results in disability for which the employee himself makes the claim or in a case in which the injury causes death and the dependent survivors present the claim.

Concluding, then, as we do, that section 28 of the act is available as a defense in death cases, we next consider the evidence relied upon by defendant as showing that an adequate safety guard or device had been furnished to the employee, and that he deliberately refused to use it; and in passing we direct our attention at the two words which appear in section 28, to wit, "deliberate" and "adequate." It appears from the testimony of the employer that there had been furnished to Rhodes and to Cooper, another employee who was working with Rhodes on the scaffold, ropes known as safety lines, which were attached to the top of the building, and which should have been fastened around the bodies of the two employees, so that, if anything should go wrong with the scaffold, the safety lines would serve to keep the employees from falling to the ground.

There is no controverting the fact that the said lines were furnished and that for a considerable time prior to the moment of the accident both Rhodes and Cooper had worked with the lines around them. It appears that, whenever it became necessary to · move the scaffolding, it was customary for the employees to take off the safety lines and to assist in the moving, and then to readjust the safety lines, and the testimony of Cooper shows that a short time before the accident the scaffold had been moved and that he had then adjusted his own safety line, and had handed to Rhodes the safety line intended for him, but that Rhodes had refused to take it, stating that there was so little time left that they should hurry through with the work.

It is true that, though Cooper testified that, between the time at which he handed Rhodes the rope and the time at which Rhodes fell, some five minutes elapsed, he was asked to give his illustration or impression as to the length of time taken up by five minutes, and that he tolled off an actual period of twenty seconds, but twenty seconds would have been ample for the adjusting of the rope around the body had Rhodes intended to do so.

Counsel for plaintiffs contend that the word "deliberate" in section 28 requires, in order for the section to be available as a defense, that it must be shown that the employee gave serious, deliberate, and lengthy consideration to the question of whether or not he should use the safety line. We do not believe that this was the intention of the framers of the act, and we conclude that what they intended was that the word "deliberate" meant nothing more than "intentional," and we think that all that is required is that the employee be familiar with the fact that there is a safety guard available, and that he be instructed in its method of operation, and, of course, that there be sufficient time for its attachment or adjustment. Here it is shown that Rhodes had, on many prior occasions, and, in fact, several times on that same day, used the safety guard, and that he knew how to attach it. Under the circumstances, the fact that he refused to use it is the best proof of intention or deliberation on his part.

The next contention is that there is no conclusive proof that the safety guard, as furnished, was adequate, but we find in the record the testimony of the employer and that of another engaged in the same kind of business, which is to the effect that the guard furnished to Rhodes was identical with that furnished to other employees engaged in doing that kind of work, and we further find that Cooper, who was with Rhodes on the scaffold and who adjusted his safety line, was suspended thereby and did not fall, and we think that this establishes, at least in the absence of other contradictory proof, that the line furnished to Rhodes was adequate and would have protected him had he used it.

It is contended that the record does not conclusively show that Rhodes did not use the safety line. The fact is that Cooper, the other employee, admitted that he could not state that at the time of the fall the line was not adjusted around Rhodes' body, and from his very truthful statement in this regard results the argument that Rhodes, as a matter of fact, might have adjusted the line and might have slipped through it. But we think that Cooper's statement that he could not state positively that Rhodes had not adjusted the line around his body was nothing more than the unusually truthful statement of a conscientious witness, and that his belief was,

that Rhodes had not adjusted the line, and we believe that the statement made by Rhodes only a few seconds before that he did not intend to use the line, coupled with the fact that the fall itself is fairly conclusive proof of the fact that he did not use it, is sufficient to justify the belief that Rhodes, in fact, failed to use it. That after the accident the safety line was found hanging with the knots in it in no way weakens our belief in the soundness of our conclusion because it appears that the knots to which the witnesses refer remain in the line at all times, and that, when the line is adjusted around the body of the worker, the knot on the end is slipped through the loop a short distance further up the line, and that then the loop is tightened around the knot. Therefore the fact that the knots were found in the line afterward does not in any way prove that Rhodes had adjusted it around himself because those knots would have been in it whether he adjusted it, or whether he did not, since they were in the line all the time.

We conclude that the device furnished was adequate, that Rhodes deliberately failed to use it, and that his death resulted from such failure, and since, under section 28 of the Compensation Act (as amended), there can be no recovery in such case, the judgment rendered below, in so far as it awarded compensation to Gertrude Carter and her minor child, is erroneous.

After the judgment was rendered below, Union Indemnity Company was dissolved, and, in accordance with the provisions of Act No. 105 of 1898, receivers for that company were appointed. They have obtained from the court which appointed them an order which authorizes them to appear in this court and to prosecute this appeal in the place and stead of Union Indemnity Company. Counsel for Gertrude Carter and her minor daughter objected in the court below to the granting of the order authorizing the receivers to make themselves parties-appellant, but the court overruled their objection and granted the order referred to. Before us counsel again renew their objection and have filed a brief in which they seek to persuade us to refuse to allow the receivers to appear in this court.

If the receivers may not appear as parties appellant, then the judgment appealed from, so far as Union Indemnity Company is concerned, will become final, because, as to that defendant, we will have to dismiss the appeal. See Levy v. Union Indemnity Co. (La. App.) 146 So. 182, 183.

The objection of counsel for plaintiffs to the order making the receivers parties is based on the theory that the receivers are without interest. Counsel argue that the receivers may not make themselves parties to pending litigation unless they can show an interest in that litigation, and there is no doubt that this argument is sound, but counsel further argue that a receiver can have no interest in pending litigation against the corporation unless he can show that the purpose of that litigation is to charge assets in the hands of the receiver. In support of this second argument, counsel cite the opinion of this court in Levy v. Union Indemnity Co., supra, in which we referred to a decision of the Supreme Court of the United States, Pendleton v. Russell, 144 U. S. 640, 12 S. Ct. 743, 36 L. Ed. 574, and in which we said that in the Pendleton Case the receiver had been permitted to intervene, not because he was being substituted for the former defendant, but because, if he could obtain a reversal of the judgment which was on appeal, certain assets which were involved in that litigation would be released to him, and counsel also cite Tardy's Smith on Receivers, § 27, p. 98, in which the statement is made: "The receiver ought not, however, to be substituted as a party unless the pending suit specifically affects property in his possession."

Our attention is called to similar language in Ruling Case Law, vol. 23, p. 49, in which we find the following: " * * * The receiver should not be substituted, except in case of an action which seeks to charge specifically property in his hands. * * *"

And in High on Receivers, c. VIII, § 258, it is said that, where there is pending an appeal against a corporation at the time of the appointment of the receiver, "the receiver is not a necessary party to such appeal, where there is no attempt to charge the assets in his hands with the payment of plaintiff's judgment."

We think, however, that the rule referred to in the various citations is applicable rather where the attempt is made to force the receiver to become a party to pending litigation than where the receiver himself deems it advisable to do so, and we also feel that the question of whether the receiver should be allowed to intervene because of interest in pending litigation is a matter almost exclusively within the discretion of the court under the supervision of which the receivership proceedings are being conducted, and that, although the burden is on the receiver to show that he is interested in the litigation, still, where he can show such interest, he should be permitted to make himself a party, whether his interest be based on the possible release to him of assets claimed by him or on the desire to defeat unfounded claims, and thus increase the pro rata share of each ordinary creditor in the funds which may remain for them after the preference claims have been paid. In Levy v. Union Indemnity Co., supra, we said that "receivers here, if they could show that the estate being administered by them would be benefited

by the defeat of the pending action, might be permitted, by order of the court which appointed them, to appear in opposition to plaintiff's claim." It will be noted that we did not state that, in order to make themselves parties, they must show that the litigation had as its object the specific charging of assets in their hands.

It is very evident that, where litigation is pending against the former corporation, assets in the hands of the receiver cannot be affected, unless the receiver is made a party to the litigation, and it necessarily follows that, if the object of the pending suit is to charge such assets, or to affect them in any way, then the receiver must be made a party, and it follows that, if no attempt is made to charge such assets, then the receiver cannot be forced to make himself a party to the litigation. But a receiver, especially one who is appointed to take over the affairs of a defunct insurance company under a statute such as Act No. 105 of 1898, is the representative of all of the creditors, and to permit pending litigation to continue with no one to defend it would be to permit an ordinary creditor to obtain a judgment without opposition, and then to permit that creditor to share with the other general creditors in any assets which might remain after the payment of all prior claims and privileges. Therefore the question of whether a receiver should be permitted to intervene in such pending litigation as this is one which it is particularly proper to leave to the court in which the receivership proceedings are being conducted. Of course, if it is obvious that there is no possibility that the general creditors will receive any ultimate distribution, then the receiver should not seek to make himself party to. any such litigation as this, but the court which appointed him is better able than any other court to determine whether the status of the receivership and the possibility of there being any balance left for the general creditors make it advisable to permit the receiver to be made party appellant. The reason for this is set forth in Clark on Receivers (2d Ed.) vol. 1, p. 842, § 616, as follows: "A judgment against the individual or corporation, in the absence of fraud or collusion, will establish the existence and extent of the obligation. Therefore if a suit is not properly and adequately defended by the individual or corporation, the receiver ought to conduct the defense of a law suit or be made a party defendant in an equitable action and employ counsel and defend the suit. Such a proposition seems elementary."

That the question of whether a receiver should make himself a party to pending litigation is a matter which should be left largely to the discretion of the court which appointed him is the rule announced in Corpus Juris, verbum "Receivers," vol. 53, p. 350: " * * * Whether he should be allowed to appear and defend actions is addressed to the sound discretion of the court."

Counsel also complains that, in the order under which the receivers were granted authority to make themselves parties, there was the following condition: "That the said receivers should be held free and harmless by the Lloyd's Insurance Company of America from any expenses, costs, loss, or attorney's fees, in the prosecution of these appeals."

Counsel argues that this condition, in itself, shows that the court realized that the receivers were actually without interest in the matter. We do not think so. We concede that it apparently indicates a belief that the receivers have very little interest therein, and that the court reached the conclusion that that little.interest would not justify permitting them to make themselves parties because of the possibility of court costs and attorney's fees being charged against them. That court, however, satisfied itself that the interest was sufficient to permit the intervention if the receivers could obtain an indemnity agreement from the said insurance company, which, as will probably be realized, was the surety on the appeal bond of Union Indemnity Company. However small the interest of the receivers may be, if they have an interest, that, we believe, is sufficient. The condition in the order is, of course, not binding upon this court, and if, as the result of our decree, any liability for costs or other expenses should have been placed upon the receivers, it would have been their duty to seek reimbursement for those expenses from the insurance company named in the order referred to.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it is in favor of Gertrude Carter and her minor child, be and it is annulled, avoided, and reversed, and that there now be judgment dismissing her suit on her own behalf and in behalf of her minor child. In all other respects the judgment is affirmed.

Reversed in part; affirmed in part.