Mary Margaret DAVIS, et al.,
Respondents,

v.

ROADWAY EXPRESS, INC., Appellant.

No. 15870.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 20, 1989.

Kenneth T. Walter, Mann, Walter, Burkart, Weathers & Walter, Springfield, for appellant.

Jay P. Cummings, Gannaway, Fiorella, Cummings & Bennett, Springfield, for respondents.

CROW, Presiding Judge.

Roadway Express, Inc. ("Roadway") appeals from a final award allowing compensation by the Labor and Industrial Relations Commission ("Commission"). The sole issue is whether the death benefits due the dependents of a deceased employee of Roadway under The Workers' Compensation Law, chapter 287, RSMo 1978, as amended, should have been reduced by 15 per cent pursuant to § 287.120.5, RSMo 1978, which provides:

"Where the injury is caused by the willful failure of the employee to use safety devices where provided by the employer, or from the employee's failure to obey any reasonable rule adopted by the employer for the safety of employees, which rule has been kept posted in a conspicuous place on the employer's premises, the compensation and death benefit provided for herein shall be reduced fifteen percent; provided, that it is shown that the employee had actual knowledge of the rule so adopted by the employer; and provided, further, that the employer had, prior to the injury, made a diligent effort to cause his employees to use the safety device or devices and to obey or follow the rule so adopted for the safety of the employees."

The Commission, affirming (by a two-to-one vote) an award by an Administrative Law Judge ("ALJ") of the Division of Workers' Compensation, rejected Roadway's plea for reduction.

We review the Commission's award, not that of the ALJ. *Richardson v. Falcon Products, Inc.*, 739 S.W.2d 596, 597[1] (Mo.App.1987); *Long v. City of Hannibal*, 670 S.W.2d 567, 569–70[5] (Mo.App.1984). Our review is governed by § 287.495, RSMo 1986, which provides:

"1. ... Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

...."

The claim arose from the death of Joe Curtis Davis ("decedent"). He was operating a Roadway tractor-trailer unit on an interstate highway around 1:55 a.m., December 29, 1985, when the rig left the highway, breached a guardrail, slid down an embankment and turned over on its passenger side. Investigating officers, arriving some 50 minutes later, found decedent positioned with his legs inside the cab and his upper body outside the open passenger door, pinned to the ground beneath the door and cab. He was dead. The cab was equipped with a seat belt.

The Commission found that the rig left the highway when decedent apparently fell asleep at the steering wheel. The Commission further found that the testimony of the investigating officers and the county medical examiner who performed an autopsy on decedent established that decedent was not wearing the seat belt at the time of the accident.

The ALJ, whose findings were affirmed by the Commission, found that Roadway's evidence demonstrated that Roadway had conducted extensive training of its drivers where the use of seat belts was emphasized on numerous occasions, with a videotape on seat belts being shown to decedent only 17 days prior to the accident. Several months before the accident Roadway had adopted a company policy requiring all drivers to wear seat belts while driving Roadway equipment. The ALJ found that Roadway met its burden of proof that decedent had actual knowledge of the seat belt rule. The ALJ further pronounced Roadway's evidence sufficient to show it made a diligent effort to cause seat belts to be used.

The ALJ refused, however, to reduce the benefits by 15 per cent under § 287.120.5 because, according to the ALJ, Roadway failed to meet its burden of proving that decedent "willfully" failed to use the seat belt. The ALJ ruled:

"In this case, there was no evidence presented which showed the [decedent] either deliberately or by design did not wear a seat belt or consciously refused to wear a seat belt. On the other hand, there was evidence the [decedent] was driving the truck late at night, was fatigued, had a headache shortly before the accident, and did not have the benefit of a warning buzzer or sign in the truck to remind him to use the seat belt. I believe the more likely cause of the [decedent's] failure to wear the seat belt was inadvertance [sic] or negligence. Therefore, I find and believe after reviewing all the credible evidence that the employer failed to prove the [decedent] 'willfully' neglected to use the seat belt...."

Urging the Commission to reduce the ALJ's award by 15 per cent, Roadway maintained the ALJ's determination that Roadway failed to meet its burden of showing that decedent's nonuse of the seat belt was willful was not supported by competent and substantial evidence and was against the greater weight of the evidence.

The Commission rejected that contention, stating: "We agree with the [ALJ] that there is insufficient evidence in the record to demonstrate a 'willful failure' on the part of the decedent to use a safety belt."

Roadway presented an alternative argument for reduction to the Commission, asserting that decedent's death was caused by his failure to obey a reasonable rule adopted by Roadway for the safety of its employees, i.e., that its drivers were to wear seat belts while driving Roadway equipment. The Commission noted that § 287.120.5 provides for reduction when the injury "resulted either from the employee's willful failure to use a safety device *or* from his failure to obey any reasonable rule adopted by the employer for the safety of its employees." It is evident the Commission assumed that where the injury was caused by the employee's *failure to obey a safety rule* adopted by the employer—as contrasted against the employee's *failure to use a safety device* provided by the employer—the employer was *not* required to show that the employee's violation of the safety rule was willful in order to be entitled to the 15 per cent reduction in benefits. The Commission ruled, however:

"As noted in *Triola et al. v. Western Union Telegraph Co.* [224 Mo.App.258], 25 S.W.2d 518 (Mo.App.1930), the provision regarding 'any reasonable rule' pertains to violations of rules while on the employer's premises. This provision does not contemplate violations of safety rules which might result in an accident on the highways. Although the Workers' Compensation Act has [been] subject to numerous revisements [sic] since *Triola,* this provision remains virtually unchanged and the Commission finds no subsequent treatment of this provision by the courts which addresses this precise point. Therefore, the Commission finds no merit in the employer's alternative contention raised here."

Roadway's brief in this appeal presents one assignment of error. It reads:

"The findings and final award of the ... Commission denying a 15% reduction in the death benefits awarded the employee's dependents are contrary to § 287.120.5, RSMo, and are not supported by competent and substantial evidence, are not supported by the facts found by the Commission, and are clearly contrary to the overwhelming weight of the evidence because:

### I.

The employee's death was caused by his failure to obey the posted company rule requiring the wearing of seat belts by the road drivers while driving company trucks in that the employee was ejected from his truck because he was not wearing a seat belt and was thereby crushed to death by the weight of the truck after the employer had posted the rule, imparted actual knowledge of it and made a diligent effort to cause the employee to follow it; and

### II.

The employee's death was caused by his willful failure to use the lap seat belt in his truck in that the employee was ejected from his truck because he was not wearing a seat belt and was thereby crushed to death by the weight of the truck even though the belt was easily accessible and operable, the rule requiring its use was fresh in his mind, and he knew of the potential danger in not using the safety belt."

As to paragraph "I" of the point, which we shall consider first, Roadway argues that *Triola,* relied on by the Commission, does not stand for the proposition that the "safety rule" provision of § 287.120.5 applies only to violations of safety rules occurring on the employer's premises. Roadway maintains the 15 per cent reduction should be applied where an employee's death is caused by his failure to obey a reasonable safety rule adopted by the employer whether the violation occurs on or off the employer's premises.

In *Triola* a 17–year–old employee died as a result of injuries received when a bicycle he was riding on a sidewalk was struck by a truck. The employer averred the employ-

ee, at the time of the accident, was violating a reasonable safety rule adopted by the employer, which rule required employees not to ride bicycles upon city sidewalks. The employer maintained that by reason thereof the award should be reduced 15 per cent per § 3 of the Workmen's Compensation Act, Laws 1927, p. 493, which, in pertinent part, is virtually identical to § 287.120.5, RSMo 1978.[1]

Rejecting the employer's contention in *Triola,* the appellate court said:

"In his written opinion the trial judge held that such rules adopted by an employer, and referred to in section 3 [of the Workmen's Compensation Act], were rules where the employees are engaged in work on the premises of the employer, and where the safety devices referred to in the act are used and can be used, and did not refer to an accident which might occur on the streets of the city of St. Louis, and not immediately connected with the operation of the employer's business. We are inclined to the view that under the facts of this case no deduction should be allowed." 25 S.W.2d at 520.

Roadway insists that the employer's rule in *Triola* was not adopted for the safety of employees, but was instead meant to protect sidewalk pedestrians from being run down by bicycles ridden by the employer's employees. Therefore, says Roadway, the decision in *Triola* disallowing a 15 per cent reduction was correct even though the rationale was flawed.

We disagree with Roadway's analysis. Our reading of *Triola* convinces us that the appellate court treated the rule as one adopted by the employer for the safety of its employees, not for the safety of sidewalk pedestrians, and that the appellate court based its refusal to reduce the award on the ground that the "safety rule" provision of § 3 of the Act applied only where an employee's violation of an employer's safety rule occurred on the employer's premises. We therefore find *Triola* supportive of the principle for which it was cited by the Commission in the instant case. That does not mean, however, that we agree with *Triola.*

Roadway declares it is absurd to limit the "safety rule" provision of § 287.120.5 to instances where an employee's injury occurs on his employer's premises. Roadway asserts that reasonable rules adopted by an employer for the safety of employees should apply to employees wherever they perform work for the employer. Roadway emphasizes that safety rules for driving trucks will, by definition, apply only when trucks are being driven, and that employees who drive trucks will do virtually all of the driving on streets and highways, not on the employer's premises. Consequently, says Roadway, the Commission's ruling in the instant case means an employer cannot enforce its safety rules for the operation of trucks by reducing the benefit 15 per cent under § 287.120.5.

The impact of *Triola* is obvious when we consider that truck drivers are not the only employees whose work is done away from the employer's premises. Construction workers, electricians, plumbers, painters, bricklayers and countless other types of employees will, like truck drivers, perform most, if not all, of their work away from their employer's premises.

Neither side cites, and our independent research has not found, any case except *Triola* holding that a provision in a workers' compensation law providing for reduction of benefits if an employee be injured because of his failure to obey a reasonable rule adopted by his employer for the safety of employees applies only where the em-

---

1. Section 3 of the Workmen's Compensation Act, Laws 1927, p. 493, provided, in pertinent part: "Where the injury is caused by the willful failure of the employee to use safety devices where provided by the employer, or from the employee's failure to obey any reasonable rule adopted by the employer for the safety of employees, which rule has been kept posted in a conspicuous place on the employer's premises, the compensation and death benefit provided for herein shall be reduced fifteen per cent, provided that it is shown that the employee had actual knowledge of said rule so adopted by the employer; and provided further that the employer had, prior to the injury, made a diligent effort to cause his employees to use said safety device or devices and to obey or follow said rule so adopted for the safety of said employees."

ployee is injured on the employer's premises. There are, however, cases reaching the opposite result.

In *Carter v. Christ,* 148 So. 714 (La.App. 1933), an employee of a contractor was killed when he fell from a suspended scaffold while painting an office building. The employer had furnished the employee a safety line to be fastened around the employee's body. The other end of the line was attached to the building so that if the scaffold failed the employee would not fall to the ground. The employee did not have the line attached to himself when he fell. The Louisiana law provided that no compensation would be allowed for an injury caused by the employee's deliberate failure to use an adequate safety guard. The appellate court reversed an award of compensation.

In *Riverside & Dan River Cotton Mills v. Thaxton,* 161 Va. 863, 172 S.E. 261 (1934), an electrician was replacing burned out street lights. His employer had adopted a rule that any employee doing such work was required to throw a switch shutting off the flow of electricity in the lines on the poles. The employee failed to throw the switch and was killed when his head came in contact with an energized line. The Virginia law provided that no compensation would be allowed for an injury due to the employee's willful misconduct or willful breach of any rule adopted by the employer and approved by the Virginia industrial commission. The appellate court reversed an award of compensation.

In *Brown v. Birmington Nurseries,* 173 Tenn. 343, 117 S.W.2d 739 (1938), an employee was riding on the bed of his employer's truck, facing the side with his legs dangling from the bed. He had been admonished not to ride that way. As the truck crossed a bridge the employee's legs were crushed between the truck and the bridge. Compensation was denied because of the employee's willful refusal to obey a reasonable safety rule of his employer.

In *Gregory v. McKesson & Robbins,* 54 So.2d 682 (Fla.1951), an accountant was sent by his employer to inventory a store in another city. He drove himself there in his own automobile. On the return trip he was injured when his automobile overturned while he was driving 75 to 80 miles per hour. The Florida law provided for denial of compensation if the employee's injury was occasioned primarily by his willful refusal to observe a safety rule approved by the Florida industrial commission or required by statute. Denial of compensation was upheld.

Other cases from sundry jurisdictions dealing with this area of workers' compensation law are collected in 1A A. Larson, The Law of Workmen's Compensation, §§ 32 and 33 (1985).

Nothing in § 287.120.5, and nothing in its predecessor at the time *Triola* was decided, provides that the 15 per cent reduction shall apply only in instances where the employee is injured on the employer's premises. In construing the statute that way *Triola,* as best we can determine, stands alone and in conflict with cases from other states, four of which we have just discussed.

We are mindful, of course, that The Workers' Compensation Law shall be liberally construed with a view to the public welfare, § 287.800, RSMo 1986; *Hacker v. City of Potosi,* 351 S.W.2d 760, 762[2] (Mo. banc 1961); *Grant v. Neal,* 381 S.W.2d 838, 841[6] (Mo.1964), and that in interpreting it all doubts are to be resolved in favor of the employee, *Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781, 783[2] (Mo. banc 1983); *Page v. Green,* 686 S.W.2d 528, 530[6] (Mo.App.1985). We are equally aware, however, that we must take the statute as we find it, and we are not at liberty to write into it, under the guise of construction, provisions the General Assembly did not see fit to insert. *State ex rel. Mills v. Allen,* 344 Mo. 743, 128 S.W.2d 1040, 1046[9] (banc 1939).

As there is no provision in § 287.120.5 explicitly or implicitly confining its application to injuries sustained only on an employer's premises, we are constrained to depart from *Triola* and to hold that if (a) decedent's death was caused by his failure to obey Roadway's rule that its drivers wear seat belts while driving Roadway equipment, (b) said rule was a reasonable

rule adopted by Roadway for the safety of its employees, (c) said rule had been kept posted in a conspicuous place on Roadway's premises, (d) decedent had actual knowledge of said rule, and (e) Roadway had, prior to decedent's death, made a diligent effort to cause its employees to obey or follow said rule, the benefits in the instant case must be reduced 15 per cent.

The Commission, as we have seen, found that decedent was not wearing the seat belt at the time of the accident. The ALJ, whose findings were affirmed by the Commission, found that decedent had actual knowledge of Roadway's rule requiring its drivers to wear seat belts while driving Roadway equipment, and that Roadway had, prior to decedent's death, made a diligent effort to cause its employees to follow such rule. There is sufficient competent evidence in the record to support all of the findings mentioned in this paragraph.

We have discovered no finding, however, by either the Commission or the ALJ, that (1) decedent's death was caused by his failure to obey Roadway's seat belt rule, (2) said rule was a reasonable rule adopted by Roadway for the safety of its employees, or (3) said rule had been kept posted in a conspicuous place on Roadway's premises.

As to issue "1," neither the ALJ nor the Commission reached the question of whether decedent would have been thrown beneath the cab and crushed to death had he been wearing the seat belt. The ALJ considered only the "willful failure to use a safety device" provision of § 287.120.5, and found, as we have seen, that decedent's failure to use the seat belt was not willful. It was thus unnecessary for the ALJ to reach the issue of whether such failure caused decedent's death. The Commission, as noted earlier, upheld the ALJ's finding on the willfulness issue, and accordingly failed to reach the causation issue. On the "failure to obey a safety rule" provision of § 287.120.5, the Commission, as heretofore explained, found that such provision did not apply to accidents off the employer's premises, hence the Commission again did not reach the causation issue.

As to issue "2," it can hardly be argued that Roadway's seat belt rule is not a reasonable rule adopted by Roadway for the safety of its employees. That does not, however, cure the absence of a finding on the issue.

As to issue "3," there was evidence that a notice of the seat belt rule was "posted in the driver's room," and was there when decedent was hired by Roadway in September, 1985. No finding was made to that effect, however, and respondents argue that the evidence is insufficient to support a finding that the place where the rule was posted was a "conspicuous place" within the meaning of § 287.120.5.

■ With the case in this posture we are left to determine the proper disposition of this appeal. Having rejected *Triola's* construction of the "safety rule" provision of the predecessor of § 287.120.5, we cannot uphold the Commission's refusal to reduce the benefits by 15 per cent on the ground that the "safety rule" provision of the statute applies only to injuries sustained on the employer's premises. That does not mean, however, that we must command the Commission to reduce the benefits. Reduction is warranted under the "safety rule" provision of § 287.120.5 only if, in addition to the findings already made by the ALJ and the Commission, the Commission resolves issues "1," "2" and "3," discussed above, in favor of Roadway. Resolution of any one of those issues in favor of respondents will defeat Roadway's request for reduction under the "safety rule" provision of § 287.120.5. The cause must therefore be remanded to the Commission for findings on those issues.

Turning now to paragraph "II" of Roadway's assignment of error, we are told by Roadway that it satisfied its burden of proof that decedent's failure to use the seat belt was willful. Roadway emphasizes decedent had over 10 years' experience as a truck driver, that the seat belt was easily accessible and operable, that Roadway's rule requiring its use was known to decedent and fresh in his mind, and that decedent knew of the danger of failing to use seat belts.

In *Board of Education, Mt. Vernon Schools v. Shank*, 542 S.W.2d 779, 782 (Mo. banc 1976), the Supreme of Missouri said:

" 'Willful' has been defined as 'done deliberately; not accidental or without purpose; intentional' and 'persistent' as 'continuing in a course of action without regard to opposition.' "

In *State ex rel. Kurn v. Hughes*, 348 Mo. 177, 153 S.W.2d 46, 53–54[12] (1941), the Supreme Court of Missouri said:

"An act cannot be held to be willful, wanton, and reckless by only showing a failure to exercise the degree of care due under the particular circumstances."

There is evidence in the record that decedent began the fatal trip around 5:00 p.m., December 28, 1985, that he drove until about 9:00 p.m., when he took an hour break, telling the driver of another truck that he (decedent) had a headache. Decedent took aspirin, then drove some 90 more miles before taking another break, during which he said he needed coffee. The investigating officer concluded decedent's remark about coffee tended to indicate he was fatigued and having difficulty staying awake.

The ALJ, as reported earlier, noted that the accident occurred late at night while decedent was fatigued and bothered by a headache, and that decedent did not have the benefit of a warning buzzer or sign in the truck reminding him to use the seat belt. The ALJ determined that decedent's failure to wear the seat belt was more likely due to inadvertence or negligence than to willfulness.

In reviewing findings of fact by the Commission, our inquiry is limited to whether, upon the whole record and considering the evidence in the light most favorable to the Commission's findings, the Commission could have reasonably made such findings and reached the result it did. *Sellers v. Trans World Airlines, Inc.*, 752 S.W.2d 413, 415[1] (Mo.App.1988); *Swillum v. Empire Gas Transport, Inc.*, 698 S.W.2d 921, 925[3] (Mo.App.1985); *Strohmeyer v. Southwestern Bell Telephone Co.*, 396 S.W.2d 1, 3[1] (Mo.App.1965). If the competent evidence or permissible inferences are conflicting the choice rests with the Commission and is binding upon us. *Katzenberger v. Gill*, 690 S.W.2d 473, 475[2] (Mo.App.1985); *Springett v. St. Louis Independent Packing Co.*, 431 S.W.2d 698, 700[6] (Mo.App.1968). We disregard any evidence that might support a finding different from that of the Commission even though a finding by the Commission to the contrary would have been supported by the evidence. *Matthews v. Roadway Express, Inc.*, 660 S.W.2d 768, 769[4] (Mo.App.1983); *Petersen v. Central Pattern Co.*, 562 S.W.2d 153, 155–56[2] (Mo.App.1978).

■ Given this standard of review and the record before us, we cannot override the Commission's affirmance of the ALJ's finding that decedent's failure to wear the seat belt was more likely due to inadvertence or negligence than to willfulness. Analogous cases cited by Roadway from other jurisdictions reaching the opposite result are not persuasive in view of the narrow scope of review assigned us. We are thus obliged to uphold the Commission's rejection of Roadway's plea for reduction of benefits based on decedent's alleged violation of the "willful failure to use a safety device" provision of § 287.120.5.

The final award of the Commission is reversed and the cause is remanded to the Commission for the sole purpose of findings of fact by the Commission on issues "1," "2" and "3" framed in our discussion of paragraph "I" of Roadway's assignment of error. If all of those issues are determined in favor of Roadway, the Commission shall enter an award reducing the benefits by 15 per cent. If any of those issues is determined in favor of respondents, the Commission shall enter an award in the same amount as the one whence came this appeal.

As we do not presently have before us any findings on those issues we need not, and do not, decide what findings on such issues might, or might not, be supportable by the evidence in the record. That task awaits a subsequent appeal, if any.

HOLSTEIN, C.J., and GREENE, J., concur.