**FILED**
**Sep 27, 2023**
**10:05 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Autumn Garlock,** | ) | **Docket No. 2022-06-1720** |
| **Employee,** | ) | |
| **v.** | ) | |
| **O'Reilly Wooten 2000, LLC, d/b/a** | ) | |
| **O'Reilly Auto Parts,** | ) | **State File No. 58237-2022** |
| **Employer,** | ) | |
| **And** | ) | |
| **AIU Insurance Co.,** | ) | |
| **Carrier.** | ) | **Judge Kenneth M. Switzer** |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

The Court held an expedited hearing on September 18, 2023, on Autumn Garlock's request for benefits for a back injury she suffered while lifting an object at work for O'Reilly Auto Parts. O'Reilly raised a willful misconduct defense. For the reasons below, the Court holds that O'Reilly has not presented sufficient evidence in support of its affirmative defense, and Ms. Garlock is likely to prevail at a hearing on the merits on this issue. O'Reilly must authorize and schedule an appointment with Dr. Ryan Snowden. Ms. Garlock's remaining requests are denied at this time.

### Claim History

Ms. Garlock is a material handler at O'Reilly. According to her petition, the position requires "heavy lifting." She testified that before the date of injury, she told her supervisor that the parts were occasionally "too heavy" for her to lift.

On August 4, 2022, she operated an order picker, which is a machine with a platform with forks on the back that attach to a pallet. The machine lifted her to the proper location. The pallet, on which the parts were located, was in her "power zone, " meaning it was located between her mid-thighs and shoulders so she would not have to bend down. She testified: "I got to the location, and I turned around to scan the part. And then I turned

around to put the part in the location.  And as I set it down, my back locked up.  And so I dropped it immediately[.]"

Ms. Garlock notified her supervisor and completed an incident report.  She declined treatment and was sent home.  She returned to work the next day, but O'Reilly sent her home again for a few days to "ice" the injury.  On August 8, Ms. Garlock asked to see a doctor, so O'Reilly authorized a telehealth visit.  Approximately one week later, Ms. Garlock requested treatment again, so "Amy" in human resources directed her to an urgent care clinic.  Ms. Garlock never received a panel.

While investigating the claim, O'Reilly asked Ms. Garlock to reenact the injury in the presence of the "DC manager," Charles Dwyer, and office supervisor, "Bethany."  Ms. Garlock did not describe the reenactment but said that afterward, Mr. Dwyer and Bethany decided she used an improper lifting procedure.  Ms. Garlock received "coaching" due to the event.

An adjuster took her recorded statement before denying the claim on September 13.  The denial reads, "Policy [v]iolation.  Utilizing improper lifting procedures covered in safety training."  Ms. Garlock testified that she was not allowed to work for one week afterward and went without pay.

After the denial, Ms. Garlock met with Mr. Dwyer, "Amy," and the adjuster.  Ms. Garlock recorded the conversation.  Ms. Garlock asked how they came to their conclusions, since no one had witnessed the incident.  The adjuster told her to appeal the denial.  This petition followed.

Ms. Garlock acknowledged the existence of O'Reilly's "Strain Prevention Tips and Guidelines" from its Procedures Manual.  Specifically regarding lifting, the document says, "Lift straight up and smoothly, don't jerk.  Let your legs do the work NOT your back.  Do not twist or turn your body once you have lifted the item.  Put the load down slowly." (Emphasis in original).

Ms. Garlock testified, "I followed all procedures to a T.  Did not miss a single beat." She denied that she "twisted" her body, or that she told the adjuster that she "shuffled" or "shifted" her feet.

On cross-examination, Ms. Garlock agreed that she underwent "extensive" training on lifting.  She said she understood its purpose—injury prevention—and followed it "every single day."

O'Reilly questioned Ms. Garlock about her written and verbal statements, post-injury, that it argued showed she did *not* follow proper lifting procedure.  First, she agreed

she had written she "turned the wrong way" on the incident report completed immediately after the accident, but she explained that was merely a "choice of words."

Second, she acknowledged that in her recorded statement to the adjuster, she had described the incident as follows: "I turned around and went to go grab it and lift it up and *I guess I didn't lift correctly* and I went to turn and I just locked, my back locked up[.]" (Emphasis added).

Third, O'Reilly offered a "Team Member Investigation Statement," where Ms. Garlock had pointed out the workplace had "no cameras" and had written, "No one was around when I hurt myself. No one can say if I hurt myself by not using the proper lifting and twisting." Ms. Garlock conceded she had not written that she *had* followed the procedure.

Fourth, and similarly, during the post-denial conversation, Ms. Garlock agreed she never said she had followed proper lifting techniques but instead stated that no one had witnessed the accident or her allegedly using an incorrect method. Ms. Garlock said that no one had asked her if she had followed the proper method.

Fifth, she had not written in her affidavit that she had followed proper procedures. But she said that was because the affidavit was supposed to be "brief."

O'Reilly also offered the testimony of Mike Warren, manager, to bolster its defense. Mr. Warren confirmed Ms. Garlock's training and that she received "coaching" after the accident. He said he would coach or write up other workers if he saw them violating the lifting policy. He admitted that he did not witness Ms. Garlock's accident or the reenactment, nor did he participate in either conversation she had with the adjuster.

As for treatment, records from the first visit at the urgent care clinic documented, "Lower back pain 2 weeks ago after she picked up a heavy part." Ms. Garlock was placed on restrictions.

Ms. Garlock treated on her own several months after the denial with Dr. Snowden. She offered a letter in which he stated that he diagnosed low back pain and lumbar strain. Dr. Snowden checked a box stating that, to a reasonable degree of medical certainty, the work injury she described, lifting car parts, contributed more than fifty percent to her need for medical treatment. He further wrote that she needs additional treatment, including injections, but Dr. Snowden placed no work restrictions.

At the hearing, Ms. Garlock maintained she followed the rules and asked that the Court order medical benefits with Dr. Snowden, payment of past medical bills, and temporary disability benefits. As to O'Reilly's defense, she asserted that her words were "misinterpreted" and "being twisted around."

O'Reilly countered that her improper lifting and in particular her turn was willful misconduct, so its denial was proper. It argued Ms. Garlock's testimony conflicts with her written statements. In addition, Ms. Garlock offered no medical bills, nor did she miss substantial time from work.

## Findings of Fact and Conclusions of Law

Ms. Garlock must show that she is likely to prevail at a hearing on the merits that she is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2022); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

### *Willful misconduct*

O'Reilly's defense is a threshold issue. The Workers' Compensation Law states, "No compensation shall be allowed for an injury . . . due to [t]he employee's willful misconduct." Tenn. Code Ann. § 50-6-110(a)(1). The willful misconduct defense consists of four elements: (1) the employee's actual, as opposed to constructive, notice of the rule, (2) the employee's understanding of the dangers involved in violating the rule, (3) the employer's bona fide enforcement of the rule, and (4) the employee's lack of a valid excuse for violating the rule. *Mitchell v. Fayetteville Pub. Utilities*, 368 S.W.3d 442, 453 (Tenn. 2012). The burden of establishing the defense rests upon the employer. Tenn. Code Ann. § 50-6-110(b).

Here, O'Reilly asserted the first three *Mitchell* factors are satisfied.[1] It argued that Ms. Garlock agreed that she knew of the lifting rule and its purpose, injury prevention. Further, Mr. Warren's testimony, that he would "coach" or write-up a worker who violated the rule, shows bona fide enforcement.

But consideration of the fourth *Mitchell* factor, "the employee's lack of a valid excuse for violating the rule," gives the Court pause.

In *Roper v. Allegis Group,* 2017 TN Wrk. Comp. App. Bd. LEXIS 14, at *11-12 (Feb. 10, 2017), the Appeals Board held, "In seeking to establish the fourth element of the *Mitchell* test, an employer must come forward with evidence that the employee *intended* to take the action that violated the known safety rule without a valid excuse." (Emphasis in original). The Board wrote that in *Mitchell,* the employee's actions were "willful" because he "elected" to remove protective gloves and offered an unsatisfactory excuse for his actions. *Id.*

---

[1] Mr. Warren said he would discipline an employee if he were to see them violating the lifting procedure; he did not say he has done so in the past. Arguably, O'Reilly did not satisfy this element.

4

The Board later repeated, twice, that the focus of this factor is upon the intentionality of the worker's actions. In *Iboy v. Kenten Management, LLC,* 2018 TN Wrk. Comp. App. Bd. LEXIS 23, at *20 (May 8, 2018), the Board affirmed an award of medical benefits after an expedited hearing, concluding that that the proof did not show that employee "*knowingly* violated any workplace rule[.]" (Emphasis added). And, in *Oglesby v. United Parcel Service,* 2018 TN Wrk. Comp. App. Bd. LEXIS 34, at *13, (July 18, 2018), the Board wrote, "An employee's negligent conduct is not a defense to a claim for workers' compensation benefits and to succeed on this defense, the employer must establish that the employee *willfully* violated a known safety rule." (Emphasis in original).

This interpretation is longstanding. Shortly after passage of the Workers' Compensation Law, the Tennessee Supreme Court held, "Willful misconduct means something more than negligence. It carries the idea of *deliberation and intentional wrong-doing." Nashville, C. & S. L. R. Co. v. Wright,* 147 Tenn. 619, 623 (Tenn. 2022) (emphasis added).

Here, Ms. Garlock appeared calm, self-assured, steady, forthcoming, and reasonable. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014) (listing indicators of witness credibility). She candidly acknowledged some of her past poor word choices on written documents and her failures to claim that she was following the rules when she became injured. The Court finds her credible and credits her hearing testimony: that she "followed all procedures to a T" when the accident occurred.

Ms. Garlock's testimony was that she "turned around" to scan the part before the accident. "And then I turned around to put the part in the location," she said. "And as I set it down, my back locked up. And so I dropped it immediately[.]" O'Reilly offered no contrary evidence as to her account of the injury. It likewise offered no evidence about the reenactment or how it influenced the decision to deny the claim. Instead, O'Reilly focused on Ms. Garlock's written words, and her failure to write that she followed the rules, to craft its defense.

O'Reilly essentially put form over substance. Rather, a reasonable inference from Ms. Garlock's testimony is that the part was heavy, and that her actions can be more properly characterized as reactions. Stated another way, an unexpectedly heavy item caused her body to turn, her sudden back pain, and her dropping the part. Nothing about the way she described the mechanism of injury strikes the Court as an intentional, deliberate, or willful act to violate O'Reilly's rule.

In sum, O'Reilly has not shown willfulness or that Ms. Garlock lacked a reasonable excuse for "violating the rule." Thus, it has not offered sufficient evidence in support of its affirmative defense at this expedited hearing, and the Court must assess whether Ms. Garlock is likely to prevail at trial. *Iboy,* at *18.

To prevail at trial, Ms. Garlock must show that her alleged injury arose primarily out of and in the course and scope of her employment. She must show to a reasonable degree of medical certainty that a work incident contributed more than fifty percent in causing her need for medical treatment. Tenn. Code Ann. § 50-6-102(12)(A)-(C).

In a causation letter, Dr. Snowden checked a box stating that, to a reasonable degree of medical certainty, the work incident Ms. Garlock described, lifting car parts, contributed more than fifty percent to her need for medical treatment. Dr. Snowden further wrote that she needs additional treatment. O'Reilly offered no contrary medical opinion. The Court holds that Ms. Garlock satisfied her burden and is likely to prevail at a hearing on the merits that her injury arose primarily out of her employment at O'Reilly.

*Benefits and penalty referral*

Section 50-6-204(a)(1)(A) requires an employer to furnish, free of charge, medical treatment made reasonably necessary by a work accident. Where an employer refuses to provide medical treatment and denies an employee's claim, the employer runs the risk that a physician of the employee's choosing will be designated the authorized physician and that the employer will be responsible for paying for that physician's treatment. *Blevins v. S. Champion Tray, LP,* 2019 TN Wrk. Comp. App. Bd. LEXIS 29, at \*16-17 (July 11, 2019).

In this case, O'Reilly denied the claim and afterward refused to provide medical benefits. Therefore, O'Reilly shall authorize any treatment with Dr. Snowden that is reasonable, necessary, and related to the work accident.

As to the unpaid medical bills, O'Reilly correctly argued that Ms. Garlock did not introduce any medical bills into evidence. So, the Court cannot order that it pay them at this time. She may seek reimbursement at a later hearing.

Ms. Garlock is likewise not entitled to temporary disability benefits on this record. Dr. Snowden did not take her off work or place restrictions. Ms. Garlock's authorized treatment physician placed restrictions, but she continued to work and earn the same wages. As for the week that she was unpaid after the denial, the Workers' Compensation Law allows for no compensation for the first seven days of disability resulting from a work injury. Tenn. Code Ann. § 50-6-205(a).

Finally, the Court refers the case to the Compliance Program for investigation and the imposition of penalties for potential statute and rule violations.

O'Reilly directed Ms. Garlock to the urgent care clinic approximately two weeks after she reported the injury. A penalty referral is proper when an employer fails to timely

provide a panel. Tenn. Code Ann. § 50-6-118(9). Tennessee Compilation Rules and Regulations 0800-02-01-.06(1) (May, 2018) also instructs an employer to offer a panel no later than three business days after receiving notice of a workplace injury when an employee has requested medical care. Here, O'Reilly sent her to telehealth and later to a clinic it chose, and it did not offer a panel within three days of notice.

Further, Rule 0800-02-14-.04(6) (September, 2022) requires decisions on compensability by the adjusting entity within fifteen calendar days of receipt of notice of the injury. O'Reilly did not deny the claim within that timeframe.

IT IS ORDERED AS FOLLOWS:

1. O'Reilly must authorize an appointment with Dr. Snowden and furnish any reasonable, necessary, work-related treatment that he recommends.

2. Ms. Garlock's requests for payment/reimbursement of past medical bills and for temporary disability benefits are denied at this time.

3. The case is referred to the Compliance Program for consideration of the imposition of penalties.

4. A status hearing is set for **November 20, 2023, at 1:15 p.m. Central Time.** You must dial (615) 532-9552 or (866) 943-0025 to participate.

5. Unless an interlocutory appeal of this Expedited Hearing Order is filed, compliance with this order must occur by seven business days of entry of this order as required by Tennessee Code Annotated section 50-6-239(d)(3). Confirmation of compliance must be submitted by email to WCCompliance.Program@tn.gov by the compliance deadline. Failure to do so may result in a penalty assessment for non-compliance. For compliance questions, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED September 27, 2023.**


_Kenneth M. Switzer_
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**Appendix**

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice and employer's additional issues
3. Order Setting Status Hearing
4. Hearing Request
5. Status Hearing Order
6. Employer's Witness and Exhibit List
7. Employer's Expedited Hearing Position Statement
8. Employee's notice of filing of voice recording

Evidence:
1. Declaration of Ms. Garlock
2. Notice of Denial
3. Wage Statement
4. Rule 72 Declaration of Andrea Hillis
5. Medical records for Expedited Hearing
6. Transcript and voice recording: Statement from Ms. Garlock to Andrea Hillis
7. Voice recording of post-denial conversation
8. Team Member Injury Report
9. Team Member Investigation Statement Form
10. O'Reilly Auto Parts DC Procedures Manual-Strain Prevention Tips and Guidelines

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on September 27, 2023.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Autumn Garlock, employee | | X | X | autumn.garlock99@gmail.com<br>21 Bronson Point Apt 101<br>Lebanon TN  37087 |
| David Goudie, employer's attorney | | | X | dgoudie@morganakins.com |
| Compliance Program | | | X | WCCompliance.Program@tn.gov |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*